# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TEAM WORLDWIDE CORPORATION, | |
| Plaintiff, | Case No. 2:19-cv-92-JRG-RSP |
| v. | LEAD CASE |
| ACADEMY, LTD D/B/A ACADEMY SPORTS + OUTDOORS, | **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |
| Defendant. | |
| ACE HARDWARE CORPORATION, | Case No. 2:19-cv-00093-JRG-RSP |
| AMAZON.COM, INC, AMAZON.COM LLC, | Case No. 2:19-cv-00094-JRG-RSP |
| BED BATH & BEYOND INC., | Case No. 2:19-cv-00095-JRG-RSP |
| COSTCO WHOLESALE CORPORATION, | Case No. 2:19-cv-00096-JRG-RSP |
| DICK'S SPORTING GOODS, INC., | Case No. 2:19-cv-00097-JRG-RSP |
| THE HOME DEPOT, INC., | Case No. 2:19-cv-00098-JRG-RSP |
| MACY'S, INC., MACY'S.COM, LLC, | Case No. 2:19-cv-00099-JRG-RSP |
| TARGET CORPORATION, and TARGET BRANDS, INC., | Case No. 2:19-cv-00100-JRG-RSP |
| SEARS, ROEBUCK AND CO., SEARS HOLDINGS CORPORATION, and TRANSFORM HOLDCO LLC, | Case No. 2:20-cv-00006-JRG-RSP |
| Defendants. | CONSOLIDATED CASES |

# CONSOLIDATED DEFENDANTS'
# MOTION TO STRIKE INFRINGEMENT CONTENTIONS

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 1

    A. Litigation History ............................................................................................................ 1

    B. The '018 Patent ................................................................................................................ 2

    C. The Accused Products and TWW's Infringement Contentions ...................................... 2

    D. Efforts to Resolve these Disputes .................................................................................... 5

III. ARGUMENT .......................................................................................................................... 5

    A. TWW has not provided charts complying with Patent Rule 3-1(c). .............................. 6

        1. Intex Pumps ................................................................................................................ 8

        2. Coleman/Aerobed Pumps ........................................................................................... 8

        3. Bestway Products ....................................................................................................... 9

        4. Additional Accused Products ..................................................................................... 9

    B. TWW has not identified each Accused Instrumentality as required by Rule 3-1(b). ......... 13

IV. CONCLUSION .................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Alacritech Inc. v. CenturyLink, Inc.*,
   No. 216CV00693JRGRSP, 2017 WL 3007464 (E.D. Tex. July 14, 2017)...................... passim

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
   359 F. Supp. 2d 558 (E.D. Tex. 2005) ........................................................................................5

*Connectel, LLC v. Cisco Sys., Inc.*,
   391 F. Supp. 2d 526 (E.D. Tex. 2005) ........................................................................................5

*Jaipuria v. Linkedin Corp.*,
   No. 6:11-CV-66, 2013 WL 12146741 (E.D. Tex. Mar. 27, 2013) ...........................................12

*Sol IP, LLC v. AT&T Mobility LLC*,
   No. 218CV526RWSRSP, 2020 WL 1911388 (E.D. Tex. Apr. 20, 2020)...............................13

*Tivo Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 2:15-cv-1503-JRG, 2016 WL 5172008 (E.D. Tex. July 22, 2016).............................12, 14

*UltimatePointer, LLC v. Nintendo Co.*,
   No. 6:11-CV-496, 2013 WL 12140173 (E.D. Tex. May 28, 2013)...................................11, 12

## I.   INTRODUCTION

TWW's contentions identify 38 pump models that are attached to the accused airbeds, but TWW has charted only 15 of those pump models. In addition, TWW identifies in its "Additional Accused Products" charts over 150 other accused products that rely on a pump model from one brand as "representative" of products from multiple different brands. TWW's refusal to completely chart the 38 identified unique pump models or even identify relevant pump models for each brand of accused products—particularly when the key limitations in the asserted patent focus on the pump structure—is improper. Accordingly, Defendants move the Court to strike the unidentified and uncharted products from TWW's Infringement Contentions or require TWW to provide the detailed Contentions to which Defendants are entitled under the Patent Rules.

## II.   BACKGROUND

### A.  Litigation History

The accused products relate to airbeds with pumps built into the airbeds. TWW filed a case in this Court against Wal-Mart (the "Wal-Mart case") in 2017. The three largest suppliers of the accused products intervened as parties, and TWW obtained discovery from the suppliers. The parties eventually settled, and the Court dismissed the case with prejudice. (Ex. 1[1]). In 2019, TWW filed these lawsuits against 10 additional retailer defendants, asserting the same three patents as in the Wal-Mart case against some of the same products, including some of the same pump models, accused in the Wal-Mart case, but also against other brands, models, and pumps.

The present cases were stayed pending completion of IPRs challenging the three asserted patents. Pursuant to this Court's order (Dkt. 27), the Court lifted the stay as to one of those

---

[1] All Exhibits cited herein are being submitted with the Declaration of Lauren Steinhaeuser in Support of the Consolidated Defendants' Motion to Strike Infringement Contentions.

patents—the '018 Patent—and consolidated the cases for pretrial purposes. The parties are currently in the early stages of litigating the '018 Patent.

### B. The '018 Patent

TWW is asserting claims 1, 7, and 11-14 of the '018 Patent. Independent claim 1 reads:

> 1. An inflatable product comprising:
>    an inflatable body comprising an exterior wall; and
>    an electric pump for pumping the inflatable body, the electric pump comprising a pump body and an air outlet, wherein the pump body is built into the exterior wall and wholly or partially recessed into the inflatable body, leaving at least a portion of the pump body exposed by the exterior wall, and wherein the pump body is permanently held by the inflatable body.

(*See* Dkt. 1, Ex. A at Cl. 1.) The claim is largely directed to "an electric pump" and specific limitations relating to that pump, including that it is comprised of a "pump body" and an "air outlet." *See id.* Further, the claim requires the "pump body" to be "built into the exterior wall" of the inflatable body and "wholly or partially recessed into the inflatable body" such that "at least a portion of the pump body" is "exposed," and also so that the "pump body" is "permanently held by the inflatable body." *See id.*[2]

### C. The Accused Products and TWW's Infringement Contentions

Appendix A to TWW's Contentions identified hundreds of products from over 70 manufacturers and suppliers as purportedly infringing the asserted claims of the '018 Patent. (*See* Appx A in Exs. 3, 7, 9, 14, 16, 18, 22, 25, 27, 30.) The accused products specifically identified by TWW vary by manufacturer/supplier, and often by product features, among other differences. One product feature that can and often does vary between airbed models—and the salient feature for purposes of this motion—is the particular pump attached to the product.

---

[2] The only difference between claim 1 and independent claim 14 is that the limitation "and wherein the pump body is permanently held by the inflatable body" is included in claim 1 but not claim 14.

Each of the accused airbed products includes a pump. TWW's Contentions identified 38 different pump models incorporated into some of the accused airbed products, as set forth below:

| Supplier/Manufacturer | Pump Models | Total |
|---|---|---|
| Air Comfort | JH-628 | 1 |
| Bestway | P3101, P3042, P342, P3042US, P3052, P3056, P3059, P3061, P3401 | 9 |
| Coleman/Aerobed | 4D BIP, HB-511N1B, R231, R3111, R120A, 232RV F2, R111, HB-511B, CT-CO-2489, 2110RF F1, 2110RF F2, 111, R2110, 232RV, 233RVW, 132RV, 2110F1, 5111, CPX, 231RVW RF F1, 3111RFi NW F2, 120, R311, and COMFORT LOCK | 24 |
| Intex | 619A, 619B, 619C, 619PC-19 | 4 |

Of the 38 distinct pump models identified, TWW's Contentions provided claim charts for only 15 pump models (highlighted in yellow above). And as discussed below, these numbers do not include the over 65 other brands associated with over 150 distinct "Additional Accused Products" TWW identified in its contentions but for which TWW does not identify any pump model at all. (*See* Section III.A, below.)

With respect to the over 100 Intex-branded accused airbed products, for example, TWW charted only Intex pump model 619A for all four identified pump models. TWW called the pump model 619A an "exemplary representative model," and asserted that the other Intex pump models "are not materially different from" the 619A model.[3] Similarly, despite accusing over 40 Coleman/Aerobed-branded products with 24 distinct pump models used throughout those products, TWW only attempted to chart 11 pump models. TWW again asserted that the uncharted pumps "are not materially different" than the "exemplary representative models" used in the chart.[4]

---

[3] (*See, e.g.*, Ex. 4 at 16-21; Ex. 8 at 19-25; Ex. 12 at 23-29; Ex. 19 at 19-24; Ex. 23 at 23-30; Ex. 28 at 25-31; Ex. 31 at 27-34.)

[4] (*See, e.g.*, Ex. 32 at 4 (R231 Pump); Ex. 32 at 9 (R111 Pump); Ex. 32 at 25 (R120A Pump); Ex. 32 at 17 (R3111 Pump); Ex. 33 at 10 (HB-511N1B Pump); Ex. 33 at 25 (HB-511B Pump); Ex. 26 at 20 (232RV F2 Pump); Ex. 19 at 8 (4DBIP Pump); Ex. 20 at 11 (CT-CO-2489 Pump); Ex. 17 at 5 (Comfort Lock Pump); Ex. 17 at 17 (2110RF F2 Pump).)

And for over 28 Bestway-branded products, TWW again only partially charted pump models 3101 and 3042 as representative of all accused products.[5]

In addition to the specifically identified products by manufacturer/supplier, TWW's Contentions include a laundry list of "Additional Accused Products," that varies by Defendant.[6] As with the Intex, Coleman/Aerobed, and Bestway products, TWW attempts to use a representative model(s) as to each Defendant to capture multiple other accused products, most of which are not even the same brand as the "representative model(s)."[7] For example, in the Amazon Contentions, TWW charts a single pump model for a single Air Comfort product, then states that that pump is representative of all other "miscellaneous" models and brands Amazon is alleged to have offered, the vast majority of which are not Air Comfort products. TWW has made no showing that any (much less all) of these products use the "representative" pump it charted. (Ex. 13 at 7.)

Finally, TWW included a "catch all" statement in its Contentions in an effort to capture additional products. For example, with respect to products manufactured by Intex and sold at Target, TWW attempts to include in the Accused Instrumentalities each "inflatable mattress product . . . that includes a built-in pump as well as all limitations of the Asserted Claims." (Ex. 27 at 2.) TWW's Contentions related to the other Defendants and product suppliers/manufacturers included similar statements.[8]

---

[5] (*See, e.g.*, Ex. 5 at 21-27; Ex. 12 at 21-28; Ex. 29 at 23-31.)

[6] (Ex. 3 at 5-6; Ex. 9 at 40-76; Ex. 14 at 4-5; Ex. 16 at 4; Ex. 18 at 5; Ex. 22 at 14-16; Ex. 25 at 4; Ex. 27 at 34-37; Ex. 30 at 35-53.)

[7] (Ex. 6 at 19-27; Ex. 13 at 28-38; Ex. 15 at 19-29; Ex. 17 at 24-35; Ex. 21 at 20-29; Ex. 24 at 23-31; Ex. 26 at 28-38; Ex. 29 at 23-31; Ex. 34 at 27-35.)

[8] (Ex. 3 at 2, 4, 5, 6; Ex. 7 at 2; Ex. 9 at 2, 28, 34, 40; Ex. 14 at 2-4; Ex. 16 at 2-4;  Ex. 18 at 2, 4-5, 6; Ex. 22 at 2, 12, 14; Ex. 25 at 2, 4; Ex. 30 at 2, 21, 28, 35.)

### D. Efforts to Resolve these Disputes

After they evaluated the Contentions, Defendants notified TWW that its Contentions were deficient, including because TWW failed to specifically identify how each accused product meets each limitation of each asserted claim and because the allegedly "representative" pumps have structures that are materially different from the other accused pumps. (Ex. 35.) TWW declined to amend its contentions and threatened to seek sanctions against Defendants for pursuing this Motion, (*see, e.g.*, Exs. 36, 37), while also admitting, at least as to one of the Intex accused but uncharted pumps, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 38 at 2).[9] Defendants reminded TWW that prior litigation did not change its obligations in this case, in particular as to accused products that were not part of the Wal-Mart case. (Ex. 40). The parties remain at an impasse.

### III. ARGUMENT

"The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun." *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). "[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path...." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005). "Plaintiffs . . . must explain with great detail their theories of infringement." *Id.* at 528. In particular, Patent Rule 3-1(c) requires that the plaintiff provide a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." Patent Rule 3-1(b) also requires a plaintiff to provide "[s]eparately for each asserted claim, each accused

---

[9] (*See also* Ex. 39.)

. . . product . . . ('Accused Instrumentality') of each opposing party of which the party is aware. This identification shall be as specific as possible." TWW has failed to comply with these Rules.

### A. TWW has not provided charts complying with Patent Rule 3-1(c).

In its contentions, TWW identifies hundreds of products from over 70 different suppliers or manufacturers incorporating at least 38—and likely many more—different types of pumps. In violation of this Court's Patent Rules, however, TWW provided claim charts for only 15 pumps from four manufacturers.

Instead of charting where each element of each asserted claim is found within each Accused Instrumentality as required by the rules, TWW's contentions rely heavily on "representative models" and purport to comply with Rule 3-1 by simply stating that the other pump models and accused products are "not materially different" from the representative pumps. (*See* Section II.C, above.) TWW's contentions do not include any explanation or analysis to support its position either (1) that a certain pump is representative of all other pumps or (2) that there is no material difference between a representative pump and all other pumps in the accused products. Rather, as to the pump models of each supplier/manufacturer, TWW took a number of improper shortcuts.

For example, with respect to the Intex products, TWW simply included a photograph of the face of each pump, (*E.g.*, Exh. 12 at 1-36), even though it had access to drawings and samples of the pumps from the Wal-Mart case. These photographs are meaningless as to the structural differences among the pump models.

With respect to Bestway's products, TWW did not provide a complete chart for any pump, instead providing charts that combine features of the P3042 and P3101 pumps.

With respect to Coleman-branded and Aerobed-branded products, TWW accused over 40 products and 24 different pump designs. However, TWW only attempted to chart 11 of the 24

pumps, and TWW did not show how any uncharted pumps were not materially different from the pumps that were charted. Throughout TWW's contentions for both the Coleman- and Aerobed-branded products, TWW simply removed the faceplate for the photos of the HB-511N1B, R3111, and R120A pump models and only in the charts for dependent claim 7. For example, TWW does not include a photo of the Comfort Lock pump removed from the exterior wall or a photo of the Comfort Lock pump with the faceplate removed. In fact, TWW only includes one photo of the Comfort Lock pump, which appears to be a promotional photo from the Costco website. (*Compare* Ex. 17 at 39 *with* Ex. 41 (website linked at Ex. 17 at 39).)

Finally, with respect to the "Additional Accused Products," TWW repeatedly asserted that a charted product is a "representative model" for other accused products from *other suppliers*. For example, in the Amazon Contentions for these "Additional Accused Products," TWW charted only the Air Comfort pump model JH-628 and asserted that this single pump model is a "representative model" for "**non-Air Comfort branded products**." (Ex. 13 at 1; *id.* at 1-45.) TWW relies on this Air Comfort pump as its PR 3-1(c) disclosure for 42 non-Air Comfort brands covering over 90 non-Air Comfort accused products. (Ex. 9 at 40-76.) TWW takes this untenable position throughout its contentions.[10]

TWW took these improper shortcuts despite the fact that the key issues in this case—as demonstrated by the plain language of the asserted claims (*see*, Section II.B, above)—are tied directly to the configuration of each pump in relation to the exterior wall of the inflatable body of each accused airbed. The uncharted pumps are not substantially similar to the "representative"

---

[10] (Ex. 3 at 5-6 & Ex. 6 at 1 (Air Comfort pump "representative" of two non-Air Comfort products); Ex. 14 at 4-5 & Ex. 15 at 1 (Air Comfort pump "representative" of five non-Air Comfort products); Ex. 16 at 4 & Ex. 17 at 1 (Aerobed pumps "representative" of two non-Aerobed products); Ex. 22 at 14-16 & Ex. 24 at 1 (Air Comfort pump "representative" of five non-Air Comfort products); Ex. 25 at 4 & Ex. 26 at 1 (Aerobed pumps "representative" of two non-Aerobed products); Ex. 30 at 35-53 & Ex. 34 at 1 (Air Comfort pump "representative" of over seventy non-Air Comfort products.)

pumps. There are material differences between them, and TWW's generic statements attempting to link all accused products to "representative" pumps fail to provide Defendants with meaningful notice of TWW's infringement theories as to the uncharted pumps. Examples of the specific material differences between the pump models in relationship to the claims are set forth below by product manufacturer/supplier.

1. **Intex Pumps**

| '018 Patent Claim Limitations | 619A ("Representative") | 619B (not charted) | 619C (not charted) | 619PC-19 (not charted) |
|---|---|---|---|---|
| 1(c), 14(c): wherein the pump body is built into the exterior wall | Casing welded to airbed external surface | Control plate, not casing, welded to airbed wall | | |
| 1(c), 14(c): wherein … at least a portion of the pump body [is] exposed by the exterior wall | Casing partially exposed | Casing completely internal and, thus, not exposed by airbed wall | | |
| 1(d): wherein the pump body is permanently held by the inflatable body. | Casing welded to airbed external surface | Casing detachably connected to control plate | | |

2. **Coleman/Aerobed Pumps**

TWW only photographed three accused pump models with the faceplate removed: the R120A, the R3111, and the HB-511N1B. These accused pump models are materially different from the other 21 pump models that TWW alleges they represent. For example, TWW did not photograph the Comfort Lock pump removed from the exterior wall of the mattress or photograph the Comfort Lock pump with the faceplate removed. Unlike the 10 other pumps that TWW charted at least one photograph of, the Comfort Lock model includes two pumps. Independent claim limitations 1(c) and 14(c) include "wherein the pump body is built into the exterior wall." Thus, without removing the faceplate and photographing the two pumps present in the Comfort Lock

model, TWW cannot have analyzed whether the Comfort Lock pump body is built into the exterior wall of the mattress, as required by independent claims 1 and 14. Further, because the Comfort Lock pump has two pumps, while the other photographed pumps have only one, there are material differences between the Comfort Lock model and the other pump models photographed. Therefore, TWW cannot use the other charted pumps to represent the Comfort Lock model.

### 3. Bestway Products

With respect to Bestway's products, TWW similarly provided partial, incomplete charts relying on two photographs of the P3042 pump and the P3101 pump. However, TWW failed to provide a chart that completely details all elements of the accused product.[11] Moreover, TWW improperly groups the P3042 pump and the P3101 pump for the limitations, but these pumps are different as the casing of the P3101 is not "built in/built into" the inflatable body. TWW's charts completely ignore the structural differences in the two charted pumps and instead rely on general, boilerplate statements.

### 4. Additional Accused Products

The fact that there are material differences identified above among the accused products from the *same* suppliers/manufacturers makes it highly likely that there are material differences among the accused products from *different* suppliers/manufacturers that TWW has grouped together in its "Additional Accused Products" charts. Further, the Additional Accused Products for several retailers include products they do not currently offer and for which TWW has provided no evidence that the retailer ever sold.[12] It is TWW's burden—not Defendants'—to support its assertions that a few "representative" models are "not materially different" than the approximately

---

[11] (*See, e.g.*, Ex. 5 at 21-27; Ex. 12 at 21-28; Ex. 29 at 23-31.)
[12] *See, e.g.*, Ex. 9 at 71-76.)

over 150 accused products to which TWW would have them apply. *Alacritech Inc. v. CenturyLink, Inc.*, No. 216CV00693JRGRSP, 2017 WL 3007464, at *2 (E.D. Tex. July 14, 2017).

Despite these material differences or complete lack of association between the charted pumps and uncharted pumps, TWW has argued that it has no obligation to amend its contentions. (*E.g.*, Exs. 37, 38.) TWW's argument is unfounded. First, TWW relies heavily on a document, "WI's Notice Regarding Infringement Defense," (the "WI Notice"), filed in the Wal-Mart case where, in response to an order from this Court, certain pump models and products including the same were stipulated to infringe the '018 Patent claims subject to the conditions in the WI Notice, including being limited to the Court's claim construction order in that case.[13] TWW's attempt to use the WI Notice to satisfy its P.R. 3-1 obligations is improper for numerous reasons, including that the Notice does not address each accused product in this case.[14]

For example, with respect to Intex products, the only "accused product" in the Wal-Mart case to which the Notice could possibly apply was the pump model 619A (the only pump model TWW charted in this case for Intex products); there is no dispute that the WI Notice did not apply to any of the three uncharted pump models in this case.

Similarly, with respect to Bestway, the only "accused product" in the Wal-Mart case to which the filing could possibly apply was the pump model P3042 (one of the models charted for this case). There is no dispute that the filing in the Wal-Mart case did not apply to any of the remaining uncharted pump models in this case or the incomplete chart for the P3101.

With respect to Coleman, the Notice does not apply because Coleman contested infringement of the independent claims (and therefore all claims) of the '018 Patent. (Ex. 2 at ¶5.)

---

[13] *E.g.*, Ex. 11 at 35; Ex. 10 at 1; Ex. 12 at 1; Ex. 13 at 7; *see also* Ex. 36; Ex. 37 at 3.

[14] (Ex. 2 at 1 n.2). TWW also ignores that the WI Notice occurred before TWW participated in *inter partes* review of the '018 Patent and the other patents identified in TWW's Complaint, and thus occurred without the benefit of additional intrinsic and extrinsic evidence that is relevant to claim construction in this case.

In addition, the Comfort Lock, R5111 (e.g., from the AIRBED T DH PILLOWTOP W/BIP C001), R233 (e.g., from the AIRBED T 17" DH W/120V BIP & AM C001) and R111USB (*e.g.*, from the AIRBED T 24" DH W/ 120V BIP USB C001) pumps were not at issue in the Wal-Mart case.

And with respect to the "Additional Accused Products," the WI Notice mentions only Airtek, Air Cloud, AirBedz, Altimari, Pittman, and TexSport. Of those six brands, only Airbedz and Pittman products are accused in the present case. In other words, there is no dispute that the WI Notice does not apply to the other over 60 brands accused across TWW's "Additional Accused Products" charts—for which TWW provides no analysis whatsoever.

Second, although the Court has excused plaintiffs from preparing separate charts for each instrumentality in certain instances, none of those exceptions apply here. *See Alacritech*, 2017 WL 3007464, at *2. For example, TWW has not asserted, let alone supported, that any additional charts would be identical to those already served. *See, e.g.*, *UltimatePointer, LLC v. Nintendo Co.*, No. 6:11-CV-496, 2013 WL 12140173, at *3 (E.D. Tex. May 28, 2013) ("It is possible for a plaintiff to use a single chart for multiple products, *if* separate charts would be *identical* for each product." (emphasis in original)). Nor has TWW provided any reasoned analysis to support its assertion that one product is "representative" of others. As this Court has found, to "designate and chart only an exemplar accused infringing product, Plaintiff must provide an explanation of the technical and functional identity of the products represented." *Id.* at *3. In other words, "broad conclusory allegations that the products are similar do not allow Plaintiffs to circumvent the Local Rules." *Id.*

TWW's statements that certain models are "representative" and that the different models "are not materially different" are the types of "broad conclusory allegations" that fail to meet the requirements of the Patent Rules. In *Alacritech*, the plaintiff provided charts only for a single

-11-

"exemplary product," while accusing at least 90 products of infringement.  2017 WL 3007464, at *1, 3-4.  Recognizing that a number of courts have clearly addressed this issue, the Court ordered plaintiff to chart every model accused of infringement, or to "explain and support, as part of its contentions, with specificity and supporting documentary or declaratory evidence, its assertions there are no material differences between the accused devices that affect its infringement theories for the uncharted products relative to the charted products."  *Id.*; *see also Jaipuria v. Linkedin Corp.*, No. 6:11-CV-66, 2013 WL 12146741, at *3 (E.D. Tex. Mar. 27, 2013) ("Plaintiffs have not explained why these products are similar, rather they simply stated in a footnote that the Hoover's Connect product was encompassed by the infringement contentions. This in no way notifies Defendants of Plaintiffs' infringement theories regarding this product."); *UltimatePointer*, 2013 WL 12140173, at *2 ("[T]he breadth of the accused products does not excuse Plaintiff from the duty of providing infringement contentions that are reasonably precise and detailed to provide defendants with adequate notice of the plaintiff's theories of infringement.").  Simply put, TWW cannot rely on its unsubstantiated and conclusory contentions of "representative" products and "not material" differences.

Third and finally, TWW's failure to properly chart the accused products improperly shifts the burden onto Defendants, requiring the Defendants to prove any differences among them– essentially reversing the burden of proof.  The burden is on TWW, not the Defendants, to investigate and set forth its infringement theories with specificity. *Tivo Inc. v. Samsung Elecs. Co., Ltd.,* No. 2:15-cv-1503-JRG, 2016 WL 5172008, at *3 (E.D. Tex. July 22, 2016).

Because TWW has failed to comply with the clear requirements of the Patent Rules and this Court's precedent, the Court should strike TWW's reliance on representative products and limit the scope of TWW's accused products to the specifically identified products which

incorporate the charted pump models. Alternatively, at a minimum, the Court should require TWW to chart separately each of the pump models for each manufacturer/supplier or, alternatively, to provide documentary and declaratory evidence that the representative products are not materially different for purposes of infringement, specifically addressing the differences described above. *Alacritech*, 2017 WL 3007464, at *3-4.

### B. **TWW has not identified each Accused Instrumentality as required by Rule 3-1(b).**

Contrary to the requirements of P.R. 3.1(b), TWW used catch-all language to expand the scope of its contentions beyond the specifically identified accused products in Appendix A to its Contentions. In the Target contentions, for example, TWW accused over 100 Intex products by model name. Defendants do not contest that these specifically named products are properly identified under Rule 3-1(b). TWW went further, however, and included a statement in its contentions accusing

> [e]ach Intex inflatable mattress product imported, used, offered for sale, or sold by one or more defendants ***that includes a built-in pump as well as all of the limitations of the Asserted Claim*** . . . including but not limited to the following and products in the same family, product line, style, and/or design, such as additional sizes or varying feature configurations thereof[.]

(Ex. 4 at 2 (emphasis added).) TWW included similar "catch-all" language throughout its contentions. (*See*, n.8, above).

Such catch-all language, which does no more than define the "Accused Instrumentalities" essentially as "products that infringe," is improper; it "has no effect under the rules." *Alacritech*, 2017 WL 3007464, at *3; *Sol IP, LLC v. AT&T Mobility LLC*, No. 218CV526RWSRSP, 2020 WL 1911388, at *3 (E.D. Tex. Apr. 20, 2020) ("catch-all" language "is contrary to this Court's local rules and to this Court's case law on the issue"). Indeed, this type of unsupported contention "puts the onus on [the Defendants] to determine what devices infringe—which is contrary to the intent

-13-

of the Patent Rules." *Alacritech*, 2017 WL 3007464, at *3. As this Court has recognized, "it is [plaintiff], not [defendant], who knows best what its infringement theory is. . . . [Plaintiff] cannot simply rely on the 'same or similar functionality' language to sweep in additional products that have not been identified with sufficient specificity in the Original Contentions." *Tivo*, 2016 WL 5172008, at *3.  Accordingly, this Court should strike the catch-all language and limit the scope of accused products to those specifically named, at a minimum, by product family or airbed model number.  *Id.* (striking products that were not reasonably disclosed in the original contentions); *Alacritech*, 2017 WL 3007464, at *2-3.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully ask this Court to strike portions of TWW's P.R. 3-1 infringement contentions, including those that refer to any products other than those which contain the specifically charted pump models. Alternatively, Defendants ask the Court to order TWW (1) to chart the accused products by pump model, including how each pump model meets each element of each Asserted Claim, or (2) as part of its contentions, to explain and support, with specificity and supporting documentary or declaratory evidence, its assertions there are no material differences between charted and uncharted pump models, including specifically addressing in detail the differences set forth herein as to each pump model, and (3) to strike the circular "catch-all" language in TWW's Contentions.

Dated: May 27, 2020                              Respectfully submitted,

                                                 */s/ Charles Everingham IV*
                                                 Charles Everingham IV
                                                 State Bar No. 00787447
                                                 **WARD, SMITH & HILL, PLLC**
                                                 P.O. Box 1231
                                                 Longview, TX  75606-1231
                                                 (903) 757-6400 (telephone)
                                                 (903) 757-2323 (facsimile)

Email: ce@wsfirm.com

*Counsel for Defendants Ace Hardware Corporation; Dick's Sporting Goods, Inc.; Home Depot U.S.A., Inc. and Home Depot Product Authority, LLC; Target Corporation; Sears, Roebuck and Co., and Sears Holdings Corporation; and Transform SR LLC and Transform KM LLC*

**FAEGRE DRINKER BIDDLE & REATH LLP**
R. Trevor Carter (admitted in E.D. Texas)
trevor.carter@faegredrinker.com
Andrew M. McCoy (admitted in E.D. Texas)
andrew.mccoy@faegredrinker.com
Reid E. Dodge (admitted in E.D. Texas)
reid.dodge@faegredrinker.com
300 N. Meridian St., Suite 2500
Indianapolis, IN  46204
(317) 237-0300 (telephone)
(317) 237-1000 (facsimile)

Lauren M.W. Steinhaeuser (admitted in E.D. Texas)
lauren.steinhaeuser@faegredrinker.com
90 S. Seventh St., Suite 2200
Minneapolis, MN  55402
(612) 766-7000 (telephone)

*Counsel for Defendants Academy, Ltd d/b/a Academy Sports + Outdoors; Ace Hardware Corporation; Dick's Sporting Goods, Inc.; Home Depot U.S.A., Inc. and Home Depot Product Authority, LLC; Target Corporation; Sears, Roebuck and Co., and Sears Holdings Corporation; and Transform SR LLC and Transform KM LLC*


 /s/ Michael C. Smith w/permission Charles Everingham IV
Michael C. Smith
State Bar No. 18650410
Siebman, Forrest, Burg & Smith, LLP
113 E. Austin St.
Marshall, TX  75671
Office: 903-938-8900
michael.smith@siebman.com

-15-

*Counsel for Defendants Academy, Ltd d/b/a Academy Sports + Outdoors; Ace Hardware Corporation; Amazon.com, Inc. and Amazon.com LLC; Bed Bath & Beyond Inc.; Costco Wholesale Corporation; Dick's Sporting Goods, Inc.; Macy's Retail Holdings, Inc. and Macy's.com, LLC; Home Depot U.S.A., Inc. and Home Depot Product Authority, LLC; and Target Corporation*

Robert T. Cruzen
**KLARQUIST SPARKMAN LLP**
One World Trade Center
121 SW Salmon St., Suite 1600
Portland, OR 97204
*Counsel for Defendants Amazon.com, Inc. and Amazon.com LLC*

John W. Harbin
Gregory J. Carlin
Walter Hill Levie III
**MEUNIER CARLIN & CURFMAN LLC**
999 Peachtree St. NE, Suite 1300
Atlanta, GA  30309
*Counsel for Defendants Bed Bath & Beyond Inc.; Costco Wholesale Corporation; and Macy's Retail Holdings, Inc. and Macy's.com, LLC*

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that this motion is filed under seal pursuant to the Protective Order (Dkt. 94).

　　　　　　　　　　　　　　　　　*/s/ Charles Everingham IV*

**CERTIFICATE OF CONFERENCE**

The parties have complied with the meet and confer requirement in Local Rule CV-7(h). In addition to exchanging written correspondence concerning these issues, on May 6, 2020, counsel for the parties to the above-captioned case held a telephone conference to discuss the issues raised in this Motion.  K.T. "Sunny" Cherian, Robert Harkins, Corrine Davis, and Elizabeth DeRieux attended for the Plaintiff.  Trevor Carter, Andrew McCoy, Lauren Steinhaeuser, Chad Everingham, Michael Smith, Rob Cruzen, Steven Caloiaro, Walter Hill Levie, and Gregory Carlin attended for the Defendants.  Counsel discussed the issues raised in this Motion and exchanged their respective views of the merits.  The parties were unable to reach agreement on the relief requested by this Motion and those discussions have conclusively ended at an impasse, leaving an open issue for the Court to resolve.  The Motion is therefore submitted to the Court for resolution as opposed.

      /s/ Charles Everingham IV

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed under seal electronically in compliance with Local Rule CV-5(a)(7).  A complete and unredacted copy of this document was therefore served on counsel of record, all of whom have consented to electronic service, via email on May 27, 2020.

      /s/ Charles Everingham IV