**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| TEAM WORLDWIDE CORPORATION, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:19-cv-00092-JRG-RSP |
| | § | LEAD CASE |
| ACADEMY, LTD d/b/a ACADEMY | § | |
| SPORTS + OUTDOORS, | § | |
| | § | |
| *Defendant*. | § | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court is the opening claim construction brief of Plaintiff Team Worldwide Corporation ("Plaintiff") (Dkt. No. 135, filed on August 18, 2020), the response of Defendants Academy, Ltd. d/b/a Academy Sports + Outdoors; Ace Hardware Corporation; Amazon.com, Inc.; Amazon.com LLC; Bed Bath & Beyond Inc.; Costco Wholesale Corporation; Dick's Sporting Goods, Inc.; Home Depot U.S.A., Inc.; Home Depot Product Authority, LLC; Macy's Retail Holdings, Inc.; Macy's.com, LLC; Target Corporation; Sears, Roebuck and Co.; Sears Holdings Corp; Transform SR LLC; and Transform KM LLC (collectively, "Defendants") (Dkt. No. 143, filed on September 4, 2020), and the reply of Plaintiff (Dkt. No. 146, filed on September 11, 2020). The Court held a hearing on the issues of claim construction and claim definiteness on September 28, 2020. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

**Table of Contents**

I.      BACKGROUND ..................................................................................................3

II.     LEGAL PRINCIPLES ......................................................................................4

      A.   Claim Construction ...................................................................................4

      B.   Departing from the Ordinary Meaning of a Claim Term.............................6

      C.   Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) .........7

III.    AGREED CONSTRUCTIONS…………………………………………………8

IV.    CONSTRUCTION OF DISPUTED TERMS .................................................9

      A.   "inflatable body"........................................................................................9

      B.   "electric pump" .........................................................................................14

      C.   "pump body"...............................................................................................18

      D.   "built into" / "the pump body is built into the exterior wall" .......................21

      E.   "located in" ................................................................................................25

V.      CONCLUSION ...............................................................................................28

## I.   BACKGROUND

In the case addressed in this Order, Plaintiff alleges infringement of U.S. Patent No. 9,211,018

(the "'018 Patent"). The abstract of the '018 Patent provides:

> An inflatable product includes an inflatable body and an electric pump
> for pumping the inflatable body. The electric pump includes a pump
> body and an air outlet, wherein the pump body is wholly or partially
> recessed into the inflatable body and permanently held by the inflatable
> body. Preferably, the electric pump includes a fan and a motor connected
> to the fan, and the fan is rotated by the motor in a first direction to pump
> the inflatable body or in a second direction opposite the first direction to
> deflate the inflatable body.

Claim 1 of the '018 Patent, an exemplary inflatable product claim, recites as follows, with

disputed claim language emphasized:

> 1. An inflatable product comprising:
> An *inflatable body* comprising an exterior wall; and
> An *electric pump* for pumping the *inflatable body*, the *electric pump*
> comprising a *pump body* and an air outlet, wherein the *pump body*
> is *built into* the exterior wall and wholly or partially recessed into
> the *inflatable body*, leaving at least a portion of the *pump body*
> exposed by the exterior wall, and wherein the *pump body* is
> permanently held by the *inflatable body*.

Dkt. No. 1-1 at 32.

The '018 Patent was previously at issue in another case in the Marshall Division of the

Eastern District of Texas. *Team Worldwide Corporation v. Wal-Mart Stores, Inc. et al.*, Case No.

2:17-cv-00235-JRG (E.D. Tex. 2017) (the "*Wal-Mart* Case"). In the *Wal-Mart* Case, Chief Judge

Gilstrap's Claim Construction Memorandum Opinion and Order addressed the '018 Patent and

construed several terms, some of which are also disputed in the above-captioned matter. *See Wal-*

*Mart* Case at Dkt. No. 153. The '018 Patent was also construed in *Intex Rec. Corp. v. Team*

*Worldwide Corp.*, Case No. 1:04-cv-01785-PLF (D.D.C. Mar. 28, 2008) (the "*Intex* Case"). *Intex*

Case, Dkt. No. 145.

## II.   LEGAL PRINCIPLES

## A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (quotation marks omitted) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") *cert. granted, judgment vacated*, 135 S. Ct. 1846 (2015).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in

4

understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*. at 1318; *see also Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

## B.  Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[1] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365

---

[1] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the

(Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.  Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails 35 U.S.C. § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the

_____

specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with 35 U.S.C. § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "a court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Ernie Ball, Inc. v. Earvana, LLC*, 502 F. App'x 971, 980 (Fed. Cir. 2013) (citations omitted). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## III.   AGREED CONSTRUCTIONS

The parties have agreed to the following constructions set forth in their Joint Claim Construction Charts ('070 Case Dkt. No. 131; '172 Case Dkt. No. 84).

| Term[2] | Agreed Construction |
|---|---|
| "permanently held"<br><br>'018 Patent, Claim 1 | Plain and ordinary meaning |
| "exposed by"<br><br>'018 Patent, Claims 1 & 14 | Plain and ordinary meaning |

Considering the agreement of the parties, the Court hereby adopts the parties' agreed constructions.

---

[2] For all term charts in this order, the listed claims are those identified by the parties in their Joint Claim Construction Charts.

## IV.     CONSTRUCTION OF DISPUTED TERMS

### A.  "inflatable body"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "inflatable body"  '018 Patent Claims 1, 12, 13 & 14 | "substantially airtight structure that expands when filled with air or other gases" | "a body that is substantially airtight (which may permit continuous air flow out of the body) that expands when filled with air or other gas"  Alternatively, indefine under 35 U.S.C. § 112, ¶ 2 |

### The Parties' Positions

Plaintiff submits: Plaintiff's proposed construction, which is identical to Chief Judge Gilstrap's construction in the *Wal-Mart* Case (*Wal-Mart* Case at Dkt. No. 153), construes the term as expressly defined by the applicant during prosecution. Dkt. No. 135 at 15. During prosecution of the '018 Patent, the applicant defined "inflatable body" as "a body that is substantially airtight and expands when filled with air or other gas." *Id.* (quoting Dkt. No. 135-6 at 3). During prosecution, applicant's express definition of "inflatable body" also distinguished prior art that was not substantially airtight. *Id.* at 19 (citing Dkt. No. 135-6 at 4-7). "Inflatable body" is used in the Asserted Patents consistent with this definition to refer to airbeds or air mattresses that remain inflated during use and are purposefully deflated after use. *Id.* at 16. Plaintiff's construction is also consistent with the construction by the District Court for the District of Columbia in a related patent (*Id.* (citing Dkt. No. 135-5 at 7)) and the construction by the Patent Trial and Appeal Board ("PTAB") (*Id.* at 17 (citing Dkt. No. 135-7 at 7). Finally, Defendants' proposed construction is incorrect for including "which may permit continuous air flow out of the body" because it is improper given the air-mattress context and is directly opposite to the patentee's express definition.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1, 2,

12, 13, & 14, Figs. 13A & 13B & related text, Cols. 1:23–31, 2:60–7:25, 1:35–53, 6:31–51, 6:66–67, 7:3–25, 3:42–43, 3:54–55, 3:58–4:3, 4:65, 6:1–7; and '018 Patent Prosecution History: Applicant Reply (Dkt. No. 135-6) and Applicant Amendment and Argument (Dkt. No. 135-11). **Extrinsic evidence**: *Wal-Mart* Case Claim Construction Order (*Wal-Mart* Case at Dkt. No. 153); *Intex* Case Claim Construction Order (*Intex* Case at Dkt. No. 145); U.S. Patent No. 7,246,394 (the "'394 Patent") (Dkt. No. 1-3): Abstract, Claims 1, 2, 3, 9, 11, 13, 14, 16, 17, 18, & 22, Figs. 1A, 4A, 4C, 4F-5A, 7A & related text, Col. 3:15–45, 4, 2–4, 4:39–62, 5:48–64, 6:10–16, 7:3–19, 8:14–22; and *Merriam-Webster.com*, "inflatable"[3] (Dkt. No. 123-1 at 4).

Defendants respond: the parties agree that "substantially airtight" is part of a proper claim construction for "inflatable body," and that a derivative construction is needed for "substantially airtight," but disagree as to whether "substantially airtight" permits "continuous airflow to escape from the inflatable body." Dkt. No. 143 at 6. The claims themselves confirm that an inflatable body must have an opening large enough to receive an electric pump and thus must permit continuous airflow. *Id.* at 7. Any such air retention characteristic is the result of extraneous structures attached to the pump that is mounted on the inflatable body, not the inflatable body itself. *Id.* at 8. Further, the prosecution history of U.S. Patent Application No. 10/647,814 (the "'814 Application"), which is related to the '018 Patent and shares a specification, shows continuous airflow is permitted as shown by applicant admission during prosecution. *Id.* at 9–10. Plaintiff's reliance on the '018 Patent prosecution history is misplaced. *Id.* at 10. Alternatively, Plaintiff's inconsistent statements during prosecution render the asserted claims indefinite. *Id.* at 12–15.

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1, 2, 12–14, Figs. 1A, 6C, 13A–15 and related text, Cols. 1:19–52, 2:60–7:25; and '018 Patent

---

[3] https://www.merriam-webster.com/dictionary/inflatable

Prosecution History: Office Action Resp. (Dkt. No. 143-2), Amendment after Notice of Allowance (Dkt. No. 143-8). **Extrinsic evidence**: '814 Application Prosecution History: Appeal Brief (Dkt. No. 146-3) and Reply Brief (Dkt. No. 143-12).

Plaintiff replies: "substantially airtight" does not require further construction and does not mean including continuous airflow out of the body, which would mean the opposite of "substantially airtight." Dkt. No. 146 at 6. Plaintiff has consistently maintained the same position and Defendants ignore the prosecution history established in the *inter partes* review filed by Intex. *Id.* Defendants' proposed construction is expressly not limited to minor, unintentional leakage but subverts the plain meaning of the phrase. *Id.* at 7. Defendants' argument that "inflatable body" need not be substantially airtight because the pump is built into it was rejected in the *Wal-Mart* Case and by the PTAB in the *inter partes* review. *Id.* Defendants' argument regarding the '814 Application is a red herring as it is a different patent application that is not part of the prosecution history of the '018 Patent. *Id.* at 8–10. Regarding indefiniteness, Chief Judge Gilstrap already correctly held that the construction of "inflatable body" does not render the asserted claims indefinite under 35 U.S.C. § 112, ¶ 2.

### Analysis

Both parties agree that part of the correct construction of "inflatable body" is a body or structure that is substantially airtight and that expands when filled with air or other gases. At dispute is whether this substantially airtight structure permits continuous air flow out of the body.

A device claim must be understood in its entirety as a completed product, not merely as a list of individual parts before assembly, and understood within the context of the art. The disclosed technological purpose constrains "substantially airtight." *See Wal-Mart* Case Claim Construction Order at 13 (citing *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1326–27 (Fed. Cir. 2007) (noting that a term of degree may be understood with reference to the technology)). The applicant explains that that a body is "inflatable" when it is "designed to be filled with air or gas

before use" or "designed or built to be inflated before use." *See Wal-Mart* Case Claim Construction Order at 13 (citing '018 File Wrapper November 20, 2006 Reply at 2–5, *Wal-Mart* Case Dkt. No. 133-12). This suggests that a body is substantially airtight if it is designed to retain the air or other gas used to inflate it. The "Air Retention Requirement" that Defendants argue is "directly contradicted by intrinsic evidence no other tribunal has considered in construing this term" is implicit within the term "substantially airtight" itself. *See* Dkt. No. 143 at 7

Defendants argue that "additional structures—such as a check valve, cap, cover, or O-ring—are required to prohibit air from escaping the inflatable product and thus the inflatable body. [citations omitted] None of these structures are claimed." *Id.* What is claimed is an inflatable product, not merely an inflatable body alone. Dkt. No. 1-1 at 32. Independent Claim 1 reads:

> "1. An inflatable product comprising:
> an inflatable body comprising an exterior wall; and
> an electric pump for pumping the inflatable body, the electric pump
> comprising a pump body and an air outlet, wherein the pump body is
> built into the exterior wall and wholly or partially recessed into the
> inflatable body, leaving at least a portion of the pump body exposed by
> the exterior wall, and wherein the pump body is permanently held by the
> inflatable body."

*Id.* Independent Claim 14 reads:

> "14. An inflatable product comprising:
> an inflatable body comprising an exterior wall; and
> an electric pump for pumping the inflatable body, the electric pump
> comprising a pump body and an air outlet, wherein the pump body is
> built into the exterior wall and wholly or partially recessed into the
> inflatable body, leaving at least a portion of the pump body exposed by
> the exterior wall."

*Id.* This inflatable product comprises an inflatable body and an electric pump. *Id.* While a check valve, cap, cover, or O-ring may not be individually claimed, the specification clearly shows that these can be parts of either the inflatable body or electric pump, which are claimed.

For example, Figure 2 shows an airbed 26 with a built-in socket 24, wherein an O-ring 244 is

provided on the inner wall of the socket 24. Dkt. No. 1-1 at 5, 29–30. Here, the O-ring is part of the airbed, an inflatable body, in accordance with a first embodiment of the invention. Further, the electric pump 20 has a check valve 208 inside. *Id.* Here, the check valve is part of the electric pump. Accordingly, the "Air Retention Requirement" is not directly contradicted by the '018 Patent.

With respect to other "intrinsic evidence," Defendants point to prosecution of the '814 Application. Dkt. No. 143 at 9–10. Whether or not the "inflatable body" structures applicant identified in Higgs permit a continuously escaping airflow is irrelevant. The importance of prosecution history in claim construction is how the applicant described their invention and how it is distinguished from the prior art, not whether their characterization of the prior art is correct. Pointing to features of the prior art that were not addressed by the applicant misses the point of reviewing prosecution history for claim construction.

In the April 13, 2007 Reply Brief (Dkt. No. 143-12) the applicant explains:

> "Higgs describes a low loss air mattress in which 'a plurality of air sacs are inflated and air is permitted to **leak** through small holes in the sacs.' [citation omitted] The 'small holes' are apparently of **sufficiently tiny** dimension such that the air sacs can be filled with air by a blower and furthermore are not immediately deflated when a user lies down on the mattress."[4]

Dkt. No. 143-12 at 3. This reply brief was with respect to the '814 Application, which claimed an inflatable body with a socket built into the inflatable body. Dkt. No. 146-3 at 3. Applicant did not rely on the inflatable body's lack of tiny air sacs to distinguish the '814 Application from Higgs, but rather that Higgs "fails to teach or suggest an inflatable product including an inflatable body and **a socket built in the inflatable body**, where a pump body of an electric pump is wholly or partially **located in the socket**."[5] *Id.* at 13.

Defendants claim that "the Walmart *Markman* Order did not address Defendants' indefiniteness

---

[4] Emphasis added.
[5] Emphasis added.

argument." Dkt. No. 143 at 14. From the *Wal-Mart* Case Claim Construction Order:

> "The inclusion of 'substantially airtight' in the construction does not render the meaning of the term less than reasonably certain. . . . The disclosed technological purpose (use as an airbed) constrains 'substantially airtight.' . . . Defendants have failed to carry their burden to establish that 'substantially airtight' in the applicant's definition renders any claim indefinite."

*Wal-Mart* Case Claim Construction Order at 13.

Considering all the above, the Court agrees with Chief Judge Gilstrap's previous construction of "inflatable body." Accordingly, the Court construes **"inflatable body"** as **"substantially airtight structure that expands when filled with air or other gases**."

### B.   "electric pump"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "electric pump"<br><br>'018 Patent Claims 1, 7, 11 & 14 | Plain and ordinary meaning | "an electronically powered machine or device, including at least an air outlet and a pump body, for raising, compressing, or transferring fluids, including gases" |

### The Parties' Positions

Plaintiff submits: the term "electric pump" is a simple term that Defendants do not argue is used as a term of art or carrying specialized meaning. Dkt. No. 135 at 21. Defendants' proposed construction would include extraneous language that is not helpful to a jury, not supported by the prosecution history, and "creates additional confusion by separately listing air inlet, an air outlet and a pump body, in that a jury might be led to believe that these need to be distinct components when in fact the patent . . . does not require them to be separate components." *Id.* at 22–23. "Electric pump" is simple for a jury to understand in the air-mattress context of the '018 Patent and should be given its plain and ordinary meaning. *Id.* at 23. Alternatively, Plaintiff's proposed construction does not read in additional limitations, such as an air inlet, that is not recited in the claim. *Id.* at 22.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic

evidence to support its position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1–3, 5–8, 10, 11, & 14, Figs. 13A–13B, 15 & the related text of each figure, and Cols. 1–8; and '018 Patent Prosecution History: Applicant Reply (Dkt. No. 135-6), Applicant Amendment and Argument (Dkt. No. 135-11), Amended Brief (Dkt. No. 135-8), Applicant Amendment and Argument with Request for Continued Examination (Dkt. No. 135-10), and Applicant Amendment and Argument (Dkt. No. 135-9). **Extrinsic evidence**: *Intex* Case Claim Construction Order (*Intex* Case at Dkt. No. 145) at *10; The American Heritage Dictionary (*Intex* Case, Dkt 140-13, at 5); and *Merriam-Webster.com*, "pump"[6] (Dkt. No. 123-1 at 5).

Defendants respond: Plaintiff is making a litigation argument contradicted by the prosecution history. Dkt. No. 143 at 16–18. The "electric pump" claimed in the '018 Patent includes at least an air outlet and a pump body by the plain language of the claims, and as those two elements are listed separately, the clear implication is that those elements are distinct components. *Id.* at 18 (citing *Becton, Dickinson and Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)). The prosecution history supports Defendants' proposed construction and contradicts Plaintiff's suggestion that the pump body is the only component of the "electric pump." *Id.* at 19–20. Plaintiff misrepresents the construction by the District Court for the District of Columbia, which merely resolved whether the "electric pump could only be used to inflate and deflate an inflatable body." *Id.* at 20 (citing Dkt. No. 135-5 at 5).

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1–3, 5–8, 10, 11, 14, Figs. 1A, 2, 4, 5, 6A, 6C, 7A, 8A–8C, 8E, 9A, 9B, 9E, 10A, 11, 12A, 13A–15 (and related text), and Cols. 1:19–52, 2:60–7:25; and '018 Patent Prosecution History: Appeal Brief (Dkt. No. 143-4), Reply Brief (Dkt. No. 135-10), Office Action Resp. (Dkt. No. 135-9), Appeal Brief (Dkt.

---

[6] https://www.merriam-webster.com/dictionary/pump

No. 143-5), Reply Brief (Dkt. No. 143-6), and Board Decision (Dkt. No. 143-7). **Extrinsic evidence**: '814 Application Prosecution History: Office Action Resp. (Dkt. No. 143-9), Office Action Resp. (Dkt. No. 143-10), and Office Action Resp. (Dkt. No. 143-13).

Plaintiff replies: a jury will know what an "electric pump" is, and there is no basis to add "an air outlet, and a pump body" to the construction. Dkt. No. 146 at 11. Further, adding "at least" just adds confusion. *Id.*

<u>**Analysis**</u>

Defendant argues that the "electric pump" claimed in the '018 Patent includes at least an air outlet and a pump body by the plain language of the claims. Dkt. No. 143 at 18. Independent Claim 1 reads:

> "1. An inflatable product comprising:
> an inflatable body comprising an exterior wall; and
> an electric pump for pumping the inflatable body, **the electric pump comprising a pump body and an air outlet**, wherein the pump body is built into the exterior wall and wholly or partially recessed into the inflatable body, leaving at least a portion of the pump body exposed by the exterior wall, and wherein the pump body is permanently held by the inflatable body."[7]

Dkt. No. 1-1 at 32. Independent Claim 14 reads:

> "14. An inflatable product comprising:
> an inflatable body comprising an exterior wall; and
> an electric pump for pumping the inflatable body, **the electric pump comprising a pump body and an air outlet**, wherein the pump body is built into the exterior wall and wholly or partially recessed into the inflatable body, leaving at least a portion of the pump body exposed by the exterior wall."[8]

*Id.* Defendant is correct to this point. There is a "clear implication" that those elements are "distinct components." *See Becton, Dickinson and Co. v. Tyco Healthcare Grp.*, LP, 616 F.3d 1249, 1254 (Fed. Cir. 2010). This implication is overturned by the specification. Figure 14 is reproduced below.

---

[7] Emphasis added.
[8] Emphasis added.



FIG. 14

Dkt. No. 1-1 at 27. In this embodiment, "[i]n the inflating operation, the fan 91 and motor 92 pump outside air into the airbed 90 through the holes 94, 95." *Id.* at 31. Here, both the air outlet and the air inlet are integrated into the pump body. While other embodiments may show the "pump body" and "air outlet" as distinct components of the electric pump, this embodiment shows that they are not necessarily so and the applicant both contemplated and described circumstances where they are not distinct, but integrated. This, along with the fact that the air outlet and pump body are already expressly called out in the claim, strongly suggest that the air outlet and pump body should not be read into the construction of "electric pump."

Plaintiff's argument, in its essence, is that "electric pump" is a simple concept that requires no construction. Plaintiff's original alternative construction, which was discussed in the briefing but removed from the P.R. 4-5(d) chart, aligns with the use of the term in the claims. *See* Dkt. No. 135 at 21–23; *see also* Dkt. No. 147-1 at 3. Furthermore, it matches the construction that the District Court for the District of Columbia arrived at. Dkt. No. 135-5 at 5. Without an argument to abandon a position consistent with the District Court for the District of Columbia in favor of plain and ordinary meaning,

a position Plaintiff themself originally presented, the Court leans towards the clear construction that maintains judicial consistency.

Accordingly, the Court construes "**electric pump**" as "**an electronically powered machine or device for raising, compressing, or transferring fluids, including gases**."

### C. "pump body"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- | --- |
| "pump body"<br><br>'018 Patent Claims 1, 12 & 14 | "the main part of the pump" | "pump motor, fan, and the portion of the electric pump in which the pump motor and/or fan are disposed" |

### The Parties' Positions

Plaintiff submits: Plaintiff's proposed construction is identical to Chief Judge Gilstrap's construction in the *Wal-Mart* Case, which the same counsel representing Defendants in this case agreed to in the *Wal-Mart* Case. Dkt. No. 135 at 23–24. The patentee expressly provided this construction during prosecution. *Id.* at 24. The District Court for the District of Columbia used the same construction in the related U.S. Patent No. 6,793,469 (the "'469 Patent"), and the PTAB used a similar construction. *Id.* at 24–25. Defendant's construction improperly narrows the scope of "pump body" by necessarily including a fan and a motor, in contravention to claim differentiation with Claim 2. *Id.* at 25. Defendant's proposed construction is more complicated and less clear to a jury, and their alternative indefiniteness argument lacks merit as they themselves assert a proposed construction. *Id.* at 26.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1, 12, and 14, Cols. 1:35–52 and 7:16–25; and '018 Patent Prosecution History: Applicant Reply (Dkt. No. 135-6), Appeal Brief (Dkt. No. 143-4), Applicant Amendment and Argument with Request for Continued Examination (Dkt. No. 135-10), Applicant Amendment and Argument (Dkt. No. 135-9), Appeal Brief (Dkt. No. 143-5), Reply Brief (Dkt. No. 143-6), and Decision on Appeal (Dkt. No. 143-

7). **Extrinsic evidence**: *Wal-Mart* Case: Claim Construction Order (*Wal-Mart* Case at Dkt. No. 153),

Dkt Nos. 119 and 134; *Intex* Case: Claim Construction Order (*Intex* Case at Dkt. No. 145); and

*Merriam-Webster.com*, "pump"[9] and "body"[10] (Dkt. No. 123-1 at 8–9).

Defendants respond: The plain language of the claims demonstrates that the "pump body" is

only a portion of the "electric pump," specifically only the pump motor, fan, and portion of the electric

pump in which the motor and fan are disposed. Dkt. No. 143 at 21. During prosecution, Plaintiff

confirmed that the "pump body" is a separate and distinct portion of the "electric pump." *Id.* at 21–22.

When using the ordinary and customary meaning of "pump body," Figures 8B and 14 show that the

"main or central part" of the electric pump is simply the part between protruding air inlets and outlets.

This is further shown by statements in the prosecution history of other patents. *Id.* at 25–28.

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic

evidence to support their position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1

and 14, Figs. 13A–15 and related text, Cols. 6:32–7:25; and '018 Patent Prosecution History: Office

Action Resp. (Dkt. No. 135-11), Appeal Brief (Dkt. No. 143-4), Reply Brief (Dkt. No. 135-10), Office

Action Resp. (Dkt. No. 135-9), Appeal Brief (Dkt. No. 143-5), Reply Brief (Dkt. No. 143-6), Oral

Hearing Transcript (Dkt. No. 143-32), and Board Decision (Dkt. No. 143-7). **Extrinsic evidence**: *Ex*

*parte* Reexam of U.S. Patent No. 6,793,469: Reply Brief (Dkt. No. 143-4); '814 Application

Prosecution History: Office Action Resp. (Dkt. No. 143-9), Office Action Resp. (Dkt. No. 143-10),

and Office Action Resp. (Dkt. No. 143-13); and U.S. Patent Application No. 10/459,690: Office Action

Resp. (Dkt. No. 135-11).

Plaintiff replies: Chief Judge Gilstrap already construed this term correctly. Dkt. No. 146 at 11.

Plaintiff does not argue that the pump body is the whole pump, but rather that the main part is the part

---

[9] https://www.merriam-webster.com/dictionary/pump
[10] https://www.merriam-webster.com/dictionary/body

of the pump between the inlet and outlet and Defendants' prior art figures are not inconsistent with this argument. *Id.* at 12. Defendants improperly limit the term and add confusion. *Id.*

**Analysis**

The applicant engaged in clear lexicography by expressly stating "[t]he ordinary and customary meaning of 'pump body' is the main part of the pump." Dkt. No. 135-8 at 3. Applicant then argued that "[t]he straightforward distinction drawn in claim language itself between the 'pump body' and the 'air outlet' as separate components of the 'electric pump' as a whole is readily apparent from the specification." *Id.* To support this, applicant presented two examples from the specification. *Id.* at 7–8. In the first example, the applicant stated that "[a]pplying the ordinary and customary meaning of 'pump body,' the 'main part or central part' of electric pump 42 is quite simply the part between protruding air inlet 427 and protruding air outlet 425 shown in Fig. 8B." *Id.* at 7. In the second example, the applicant stated that "[a]gain, applying the ordinary and customary meaning of 'pump body,' the 'main part or central part' of the electric pump is quite simply the part between protruding air inlet/outlets 94 and 95 shown in Fig. 14." *Id.* at 8.

Defendants argue that the plain language of the claims demonstrates that the "pump body" is only a portion of the "electric pump," specifically only the pump motor, fan, and portion of the electric pump in which the motor and fan are disposed. Dkt. No. 143 at 21. The Court disagrees. Independent Claim 1 reads:

> "1. An inflatable product comprising:
> an inflatable body comprising an exterior wall; and
> an electric pump for pumping the inflatable body, the electric pump
> comprising a pump body and an air outlet, wherein the pump body is
> built into the exterior wall and wholly or partially recessed into the
> inflatable body, leaving at least a portion of the pump body exposed by
> the exterior wall, and wherein the pump body is permanently held by the
> inflatable body."

Dkt. No. 1-1 at 32. Independent Claim 14 reads:

"14. An inflatable product comprising:
an inflatable body comprising an exterior wall; and
an electric pump for pumping the inflatable body, the electric pump
comprising a pump body and an air outlet, wherein the pump body is
built into the exterior wall and wholly or partially recessed into the
inflatable body, leaving at least a portion of the pump body exposed by
the exterior wall."

*Id.* All the claims here say about the pump body is that it is "built into the exterior wall and wholly or

partially recessed into the inflatable body, leaving at least a portion of the pump body exposed by

the exterior wall." *Id.* Reading in that the pump body is specifically only the pump motor, fan, and

portion of the electric pump in which the motor and fan are disposed based on the plain language of

the claims is improper.

Defendants also argue that during prosecution, Plaintiff confirmed that the "pump body" is a

separate and distinct portion of the "electric pump." Dkt. No. 143 at 21–22. As discussed above, this

is not the case. *See* discussion *supra* Section IV.B. While the "pump body" may be distinct from the

"air outlet," it is not necessarily so.

The applicant's lexicography is very clear. Accordingly, the Court construes "pump body" as

"the main part of the pump."

### D. "built into" / "the pump body is built into the exterior wall"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "built into"<br><br>'018 Patent Claims 1 & 14 | Plain and ordinary meaning | N/A |
| "the pump body is built into the exterior wall"<br><br>'018 Patent Claims 1 & 14 | Construction not necessary<br><br>Alternatively, plain and ordinary meaning | "for purposes of determining what structure is built into, only the portion of the structure directly in contact with, integrated into, and not detachable from the exterior wall is built into the exterior wall" |

### The Parties' Positions

Plaintiff submits: Plaintiff's proposed construction is identical to Chief Judge Gilstrap's

construction in the *Wal-Mart* Case. Dkt. No. 135 at 27. During prosecution the applicant distinguished prior art by explaining that a "removable," "non-integral" pump that is "temporarily connected" to the inflatable body is not "built into" the inflatable body. *Id.* (citing Dkt. No. 135-10 at 18–19 and 21–23). Defendant's proposed construction is more complicated and less clear to a jury, unnecessarily substituting three terms for one. *Id.* at 27–28. Defendants' citation to the prosecution history supports Plaintiff's position, not Defendants'. With respect to "the pump body is built into the exterior wall," there is no construction necessary or, alternatively, the construction should be its plain and ordinary meaning. *Id.* at 29. Plaintiff argues that because the Court is already construing the term "pump body" and "built into" there is no need to construe "the pump body is built into the exterior wall." *Id.* Plaintiff relies on the evidence cited for those terms. *Id.*

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Claims 1 and 14, Figs. 2, 4, 8A, 9A & related text for each figure, Cols. 2:62–64, 3:22–25, 4:14–16, 5:8–11, 7:18–25; and '018 Patent Prosecution History: Request for Continued Examination (Dkt. No. 135-10), at 4, 11–18, 21–22. **Extrinsic evidence**: *Wal-Mart* Case: Claim Construction Order (*Wal-Mart* Case at Dkt. No. 153), Dkt Nos. 119, 134; '394 Patent (Dkt. No. 1-3): Abstract, Claims 1, 13, & 16, Fig. 4A & related text, Cols. 1:25–28, 4:39–45, 8:14–22; U.S. Patent No. 7,346,950 (Dkt. No. 1-2): Abstract, Claim 1, Fig. 4A & related text, Cols. 1:24–27, 5:1–6, 8:45–53; and *Merriam-Webster.com*, "Built-in."[11]

Defendants respond by construing "the pump body is built into the exterior wall" rather than just "built into." Dkt. No. 143 at 28. Defendants argue: the "pump body" is the feature built into the exterior wall, not another feature of the electric pump. *Id.* Plaintiffs disclaimed any coverage broader than Defendants' proposed construction in the '018 Patent prosecution history. *Id.* at 28–29. This is also how the applicant distinguished U.S. Patent No. 4,862,533 from prior art. *Id.* at 30. Further, it is

---

[11] https://www.merriam-webster.com/dictionary/built-in

because the "pump body" is only the portion of the "electric pump" in which the motor and fan are disposed and "built into" is limited to direct contact arrangements that the PTAB allowed the asserted claims of the '018 Patent to issue. *Id.* at 31 (citing Dkt. No. 143-7 at 3–4).

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claims 1 and 14, Figs. 2, 4, 8, 9, 13A–15 and related text, Cols. 2:62–64, 3:22–25, 4:14–16, 5:8–11, and 6:31–7:25; and '018 Patent Prosecution History: Office Action Resp. (Dkt. No. 135-11), Appeal Brief (Dkt. No. 143-4), Reply Brief (Dkt. No. 135-10), Office Action Resp. (Dkt. No. 135-9), Appeal Brief (Dkt. No. 143-5), Reply Brief (Dkt. No. 143-6), Oral Hearing Transcript (Dkt. No. 143-32), and Board Decision (Dkt. No. 143-7). **Extrinsic evidence**: *Ex parte* Reexam of U.S. Patent No. 6,793,469: Reply Brief (Dkt. No. 143-4); '814 Application Prosecution History: Office Action Resp. (Dkt. No. 143-9), Office Action Resp. (Dkt. No. 143-10), and Office Action Resp. (Dkt. No. 143-13); and U.S. Patent Application No. 10/459,690: Office Action Resp. (Dkt. No. 135-11).

Plaintiff replies: Chief Judge Gilstrap has already construed "built into" and Defendants' definition adds multiple unnecessary and confusing phrases. Dkt. No. 146 at 12. Defendants are improperly attempting to bring non-infringement arguments into the claim construction process and their definition is purely litigation driven. *Id.* at 13.

### Analysis

The prosecution history sheds light on what the applicant means by "built into" by establishing what "built into" isn't. The '028 File Wrapper March 2, 2010 Reply includes the applicant statement:

> "A gas pump is not 'built into' a car because the nozzle is mated with the fill spout when filling up. Similarly, a person of ordinary skill in the art of inflatable products would not construe a handheld device that is temporarily connected to a valve of an 'inflatable body' during inflation and removed thereafter to be in any way 'built into' the 'inflatable body.'

Dkt. No. 135-10 at 3. The Court finds that, as Chief Judge Gilstrap found reviewing statements

from the same document, "[t]his comports with the plain meaning of 'built in' and 'built into'; namely, integrated into and not detachable from."

Defendants' proposed construction for "the pump body is built into the exterior wall" adds three limitations for built into: "directly in contact with," "integrated into," and "not detachable from." Dkt. No. 143 at 15. While the Court agrees that something "built into" is "integrated into" and "not detachable from," the Court disagrees on the added "directly in contact with" limitation. Defendants argue that "there is no intrinsic nor extrinsic evidence support for an indirect connection" *Id.* at 29. To support their own position, Defendants argue that "TWW consistently and repeatedly represented that 'built in' requires a direct contact (rather than merely indirect contact) relationship between the 'pump body' and the wall of the 'inflatable body.'" *Id.* To support this, Defendants point to a statement in the prosecution history that "the pump body—not just any feature of the electric pump—must be built into the exterior wall of the inflatable body and wholly or partially recessed into the inflatable body." *Id.* (citing Dkt. No. 143-6 at 3).

This establishes that the pump body must be built into the exterior wall of the inflatable body, but not that there can be no intervening surface or mechanism. This statement is made to support "not just any feature of the electric pump." Defendants point out that in overcoming the Adams reference, the applicant states that the claims "require that the 'pump body,' not an 'air outlet' such as bowl member 44 [of Adams], be built into and exposed by the external wall of 'inflatable body." Dkt. No. 143 at 30 (citing Dkt. No. 143-3 at 9). This distinction is made on the basis that there is already a firm distinction between the "pump body" and "air outlet" and that in Adams it is the "air outlet" instead of the "pump body" that is built in. For circumstances where the "pump body" and "air outlet" are not distinct from each other, this does not hold. If the "air outlet" and the "pump body" are not distinct from each other, and the "air outlet" is what is "built in," then so is the "pump body" "built in."

Furthermore, this does not contemplate circumstances where the "air outlet" and the "pump

body" are distinct, but it is some unclaimed element that is a part of the "pump body" rather than the "air outlet" that acts as an intervening contact between the "pump body" and the "exterior wall." Due to possible circumstances such as the two expressed above, the Court rejects the "directly in contact with" limitation.

Accordingly, the Court construes "**built into**" as having its **plain meaning**. In light of this construction, the Court finds that for "**the pump body is built into the exterior wall**" there is **no construction necessary**.

### E.   "located in"

| Disputed Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "located in"<br><br>'018 Patent Claims 12 & 13 | Plain and ordinary meaning | "wholly or partially recessed"<br><br>Claim 12 is indefinite under 35 U.S.C. § 112, ¶ 4 |

### The Parties' Positions

Plaintiff submits: "located in" is a simple and familiar term that Defendants do not indicate is used as a term of art or carrying specialized meaning. Dkt. No. 135 at 30. Defendants' proposed construction violates claim differentiation with respect to Claims 1 and 12. *Id.* at 31. Further, Defendants' proposed construction is not helpful to the jury, and their argument that Claim 12 is indefinite is baseless as Defendants themselves assert a proposed construction. *Id.* at 32.

In addition to the claims themselves, Plaintiff cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Claims 12 and 13, Figs. 13A–13B, 15 and the related text of each figure, Col. 1:45-47; and '018 Patent Prosecution History Appeal Brief (Dkt. No. 143-4), Appeal Brief (Dkt. No. 143-5), Reply Brief (Dkt. No. 143-6), and Decision on Appeal (Dkt. No. 143-7). **Extrinsic evidence**: *Macmillan Dictionary*, "located"[12]

---

[12] https://www.macmillandictionary.com/dictionary/american/located

(Dkt. No. 123-1 at 13).

Defendants respond: "located in" requires nothing more than a wholly or partially recessed arrangement such that Claim 12 is indefinite while Plaintiff's construction "adds some amorphous, indecipherable limitation to claim 1." Dkt. No. 143 at 32. Claim 12 is invalid as indefinite pursuant to 35 U.S.C. § 112, ¶ 4 for failing to specify a further limitation to Claim 1. *Id.* Plaintiff's own expert Dr. Stevick admitted that the partially recessed embodiments in the '018 Patent meet the "located in" limitation of Claim 12 and testified that the wholly recessed embodiment in the '018 Patent meets the "located in" limitation of Claim 12. *Id.* at 33–34. Plaintiff's reliance on the *Wal-Mart* Case's Claim Construction Order and *Traxxas LP v. Hobby Products International, Inc.* is misplaced as the *Wal-Mart* Case's Claim Construction Order addressed a different issue and *Traxxas* is distinguishable.

In addition to the claims themselves, Defendants cite the following intrinsic and extrinsic evidence to support their position: **Intrinsic evidence**: '018 Patent (Dkt. No. 1-1): Abstract, Claim 12, Figs. 13A–15 and related text. **Extrinsic evidence**: Deposition of Glen Stevick, Ph.D. (Dkt. No. 143-42) at 542:2–7 and 546:17–547:8.

Plaintiff replies: "located in" means exactly what it says and does not add some amorphous, indecipherable limitation. Dkt. No. 146 at 13. Claim 12 clarifies it is not enough for only a small portion of the pump to be partially recessed as would be permitted in Claim 1, but that the main part of the pump must be located in the inflatable body such as shown in the '018 Patent figures. *Id.* This is consistent with Dr. Stevick's testimony. *Id.* Defendant attempts to define the dependent claim as identical to the independent claim, then argue the depending claim adds nothing and is therefore indefinite, and this violates claim differentiation. *Id.* Defendants have not met their burden to "demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution history, and the knowledge in the relevant art." *Id.* at 14 (citing *Haemonetics Corp. v. Baxter*

26

*Healthcare Corp.*, 607 F.3d 776 (Fed. Cir. 2010)).

   **Analysis**

   The "located in" term is an additional limitation established in Claims 12 and 13, which depend from Claim 1. Dkt. No. 1-1 at 32. Claim 12 reads, "[t]he inflatable product as claimed in claim 1, wherein **the pump body is located in** the inflatable body."[13] *Id.* Claim 13 reads, "The inflatable product as claimed in claim 12, wherein **the air outlet is located in** the inflatable body."[14] This term "located in" is not present in Claim 1, from which Claims 12 and 13 depend. Claim differentiation strongly suggests that "located in" adds a limitation. Otherwise, Claims 12 and 13 are indefinite.

   Plaintiff argues that Defendants' proposed construction "wholly or partially recessed" violates claim differentiation with respect to Claims 1 and 12. Dkt. No. 135 at 31. The Court agrees. Plaintiff argues that Claim 12 clarifies it is not enough for only a small portion of the pump to be partially recessed as would be permitted in Claim 1, but that the main part of the pump must be located in the inflatable body such as shown in the '018 Patent figures, and that this is consistent with Dr. Stevick's testimony. Dkt. No. 146 at 13. Plaintiff does not, however, provide a construction that clarifies this distinction for the jury in a helpful way, standing by their assertion that "located in" should be assigned its plain and ordinary meaning.

   Valid dependent claims, by definition, have lesser claim scope than the claim they depend from, as they incorporate additional limitations that are not present in the independent claim. With the presumption of validity, which the Court finds Defendants have failed to overcome in their indefiniteness argument, "located in" cannot merely mean "partially recessed" without violating claim differentiation.

   Accordingly, the Court construes "**located in**" as "**wholly recessed**."

---

[13] Emphasis added.
[14] Emphasis added.

**V.      CONCLUSION**

The Court adopts the constructions above for the disputed and agreed terms of the '018 Patent. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

   **SIGNED this 30th day of November, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE