**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TEAM WORLDWIDE CORPORATION, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:19-cv-00092-JRG-RSP |
| § | LEAD CASE |
| ACADEMY, LTD d/b/a ACADEMY § | |
| SPORTS + OUTDOORS, § | |
| § | |
| *Defendant*. § | |

## REPORT AND RECOMMENDATION

Before the Court are four motions:

- Motion for Summary Judgement on Marking ("Marking Motion"), filed by Defendants Academy Ltd. d/b/a Academy Sports + Outdoors; Ace Hardware Corporation; Amazon.com, Inc.; Amazon.com, LLC; Bed Bath & Beyond Inc.; Costco Wholesale Corporation; Dick's Sporting Goods, Inc.; Home Depot Product Authority, LLC; Home Depot U.S.A., Inc.; Macy's Inc.; Macy's.com, LLC; Target Corporation; Sears, Roebuck and Co.; Sears Holding Corporation; Transform SR LLC; and Transform KM LLC (collectively, the "Defendants"). **Dkt. No. 222**. Defendants move the Court to grant "summary judgment of no marking, precluding TWW from seeking pre-notice damages . . . ." Dkt. No. 222 at 5[1].

- Motion for Partial Summary Judgment on Willful Infringement ("Willful Infringement Motion"), filed by Plaintiff Team Worldwide Corporation ("TWW" or "Plaintiff"). **Dkt. No. 207**. Plaintiff moves the Court to find that the Defendants willfully infringed the

---

[1] Citations are to document numbers and page numbers assigned through CM/ECF.

>   accused products containing Intex 619A or Bestway P3042 airbed pumps, at least as of the filing date of TWW's Complaint. Dkt. No. 207 at 2.

- Motion for Summary Judgment of No Willful Infringement ("No Willful Infringement Motion"), filed by Defendants. **Dkt. No. 217**. Defendants move the Court to grant summary judgment of no willful infringement as to all the accused products. Dkt. No. 217 at 5.

- Motion for Partial Summary Judgment of No Early Priority Date ("Priority Date Motion"), filed by Defendants. **Dkt. No. 208**. Defendants move the Court to grant summary judgment on the priority date of asserted patent. Dkt. No. 208 at 5.

The Marking Motion should be **GRANTED**. The Willful Infringement Motion should be **DENIED**. The No Willful Infringement Motion should be **DENIED**. The Priority Date Motion should be **DENIED**.

## I. BACKGROUND

In 2017, TWW brought a patent infringement action against Wal-Mart (Wal-Mart is not a party in the above-captioned case), alleging that Wal-Mart's sale of airbeds with built-in housed air pumps infringed one or more of TWW's patents, including U.S. Pat. No. 9,211,018 ("'018 Patent")—which is the patent at issue in this matter. Dkt. No. 217 at 5. On March 30, 2018, Wal-Mart, among others, filed an *inter partes* review ("IPR") petition with the Patent Trial and Appeal Board ("PTAB") challenging a number of the '018 Patent's claims. *Id*. On September 20, 2018, TWW and Wal-Mart settled their dispute. Dkt. No. 222 at 5. On October 29, 2018, PTAB instituted IPR of the '018 Patent. *See* Dkt. No. 11. On October 25, 2019, the PTAB found that the '018 Patent was valid. Dkt. No. 13.

In March 2019, the Plaintiff began filing lawsuits against other retailers, including Defendants, alleging they were selling the same or similar airbed products it had accused Wal-

Mart of selling. Dkt. No. 207 at 5. In April 2019, TWW filed its Proof of Claim in the Sears bankruptcy proceedings. Dkt. No. 251 at 4.

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party opposing summary judgment must identify specific evidence in the record and articulate the precise way the evidence supports his or her claim. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Id*. at 247-48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. "If, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point, and this is true irrespective of the type of case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). "Summary judgment is appropriate in any case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little*, 37 F.3d at 1075 (quoting *Armstrong v. City of Dallas*, 997 F.2d 62 (5th

Cir. 1993)). It should be noted, Fed. R. Civ. P. 56 does not impose a duty on the Court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Ragas*, 136 F.3d at 458.

### B. Marking

"Pursuant to 35 U.S.C. § 287(a), a patentee who makes or sells a patented article must mark his articles or notify infringers of his patent in order to recover [pre-suit] damages." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1365 (Fed. Cir. 2017) ("*Arctic Cat I*"). Section 287(a) provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent . . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

"If a patentee who makes, sells, offers for sale, or imports his patented articles has not given notice of his right by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice." *Arctic Cat I*, 876 F.3d at 1365 (internal quotations omitted).

"[T]he marking statute serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented." *Id*. at 1366 (citing *Nike, Inc. v. Wal–Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)).

"[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287. To be clear, this is a low bar. The alleged infringer need only put the patentee on notice

that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id*. at 1368 (emphasis added). To prevent gamesmanship, the Court cannot allow "infringers to allege failure to mark without identifying any products . . . . Once the alleged infringer meets its burden of production, however, the patentee bears the burden to prove the products identified do not practice the patented invention" or are marked. *See id*. If the patentee does not make this showing, it cannot recover damages before the date of actual notice. *Id*. at 1368. "Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020) ("*Arctic Cat II*") (citing *Amsted Indus. Inc., v. Buckeye Steel Castings Co.,* 24 F.3d 178, 187 (Fed. Cir. 1994)); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001) (citing *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1470 (Fed. Cir. 1997)).

However, a "patentee's licensees must also comply with § 287, because the statute extends to persons making or selling any patented article for or under [the patentee]." *Arctic Cat I*, 876 F.3d at 1365. When "third parties are involved, courts may consider 'whether the patentee made reasonable efforts to ensure compliance with the marking requirements.'" *Id*. at 1366 (quoting *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111–12 (Fed. Cir. 1996)). Again, non-compliance by either the patentee or its licensees "preclude recovery of damages only . . . for any time prior to compliance with the marking or actual notice requirements of the statute." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993).

### C.    Willful Infringement

"The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Halo Electronics, Inc. v. Pulse Electronics, Inc*., 136 S.Ct. 1923, 1926 (2016). Willfulness and enhanced

5

damages are two separate but related issues. *See SRI International, Inc. v. Cisco Systems, Inc.*, 2019 WL 1271160, at *10 (Fed. Cir. 2019) ("Enhanced damages under § 284 are predicated on a finding of willful infringement."). For an accused infringer to willfully infringe, the risk of infringement must either be "known or so obvious that it should have been known to the accused infringer." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018). To have a finding of willful infringement, the infringing party must have knowledge of the patent. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). The willfulness determination should be decided by the jury when genuine disputes of material fact are present. *Exmark Manufacturing Company Inc. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018).

### III. ANALYSIS

#### A. MARKING MOTION (DKT. NO. 222)

Defendants argue that "TWW should be precluded from seeking damages prior to the date of actual notice to each Defendant because TWW failed to mark substantially all of its licensed products in compliance with 35 U.S.C. § 287." Dkt. No. 222 at 5. Defendants contend that TWW should have marked products sold by Wal-Mart, since Wal-Mart was allegedly TWW's licensee and sold products that were allegedly covered by the '018 Patent. *See id*. at 8. To support their proposition, the Defendants point to the settlement agreement between TWW and Wal-Mart which

contemplates Wal-Mart's sale of "Covered Products[2]." *See* Dkt. No. 222-5 at §§ 1.5, 4.1. Defendants assert TWW has not submitted any evidence that it marked the "Covered Products" or took reasonable efforts to require others to mark the "Covered Products." Dkt. No. 222 at 9. Defendants contend that since TWW has not marked the "Covered Products," or submitted evidence of reasonable efforts to mark the "Covered Products," they are prohibited from seeking pre-suit damages. *See id*. at 10–11 (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537-38 (Fed. Cir. 1993).

TWW responds that it can meet its burden by "showing its affirmative compliance with 35 U.S.C. § 287(a)." Dkt. No. 242 at 4. First, TWW argues that the Marking Motion should be denied because the "Defendants have failed to fulfill their 'responsibility of providing a well-supported motion for summary judgment' and meet their obligation 'to point to portions of the record evidence that demonstrate why [they are] entitled to summary judgment.'" Dkt. No. 242 at 9 (citations omitted). Second, TWW argues that it "can demonstrate that it affirmatively complied with the marking statute." *Id*. at 12. TWW contends its summary judgment evidence is sufficient for a reasonable jury to find that TWW marked the "Covered Products." *See id*. at 13.

As an initial matter, the Court must determine whether the Defendants have adequately met their "burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat I*, 876 F.3d at 1368. Indeed, Defendants have met their burden. Defendants have adequately specified the patented articles it believes were unmarked as well as

---

[2] "Covered Products" are defined in the TWW-Wal-Mart settlement agreement as "units of built-in electric pump air beds offered for sale and/or sold at retail by Walmart either in the past or in the future prior to the expiry of the Licensed Patents that were accused of infringement of one or more Asserted Claims in the Action as well as any airbed that incorporates the same or substantially the same pump as products accused in the Action, including but not limited to any such units supplied at wholesale to Walmart by Suppliers. Alternative Designs are considered Covered Products only if they are found to infringe an Asserted Claim in the Binding Arbitration under Article 5 of this Agreement, If Airbeds that include an Alternative Design are determined to be non-infringing products pursuant to Binding Arbitration under Article 5 of this Agreement, those airbeds will not be 'Covered Products.'" Dkt. No. 222-5 § 1.5.

the timeframe these products should have been marked. Dkt. No. 222 at 8 ("TWW and its licensee failed to . . . consistently mark substantially all '018 Products since September 21, 2018 . . . . TWW submitted no evidence to support that any Licensed Wal-Mart Products[3] were marked."). Defendants have shown that Wal-Mart and TWW entered into a licensing agreement, in which "TWW [] grants Walmart a nonexclusive limited license to the Licensed Patents as to the Covered Products." Dkt. No. 222-5 § 4.1. Additionally, TWW accepted Defendants' proposition that it entered into a non-exclusive license with Wal-Mart, Wal-Mart was selling "Covered Products," and that Wal-Mart was not obligated to mark any "Covered Products." Dkt. No. 242 at 5 (Plaintiff did not dispute Defendants' Statement of Undisputed Materials Facts No. 2). Defendants have clearly articulated the products they believe should have been marked and even identified the timeframe where there was an obligation to mark. Thus, Defendants have carried their burden.

On the other hand, TWW argues that since the "Defendants present no . . . image of a Wal-Mart product licensed by TWW without proper patent marking" they have not met their burden. Dkt. No. 242 at 9. TWW has misunderstood the standard articulated in *Arctic Cat I*. Defendants only need to put TWW on notice as to the products it alleges practice the patent-in-suit that are unmarked. *Arctic Cat I*, 876 F.3d at 1368 ("The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent."). As discussed above, Defendants have sufficiently put TWW on notice by stating the airbed pump models it contends were unmarked.

TWW has not presented any evidence to support its position that the accused unmarked

---

[3] Defendants define the "Licensed Wal-Mart Products" as including "at least the following products, in addition to products supplied by Boyd and other vendors: from Bestway: air beds with pump model P3042; from Coleman: air beds with pump models 110, 111, 120, 5111, 132RV, 2110 F1, 2110RF F1, 2110RF F2, 231RVW RF F1, 232RV, 232RV F2, 233RVW, 3111RFi NW F2, 4D BIP, CPX, CT-CO-2489, HB-511B, HB-511N1B, R111, R2110, R231, R3111; and from Intex: air beds with pump model 619A." Dkt. No. 222 at 5 n. 2.

8

products were marked. The only evidence TWW presents[4] to support its position is deposition testimony from a TWW employee that " (1) 'all [TWW] products are marked with patent information' and that (2) '[TWW's] policy [to mark its own products] for a long time.'" Dkt. No. 242 at 12 (alterations in original) (citing Dkt. No. 242-1 at 4–6). This evidence, however, does not create a genuine issue of material fact. Whether TWW marks the products it sells or it sells through its vendors/suppliers is not in question, the issue the Defendants raise was whether the "Licensed Wal-Mart Products" sold by Wal-Mart (a licensee) from September 20, 2018 to March 19, 2019 were marked. TWW never addresses this question squarely. TWW argues several collateral points that do not bear on the merits of whether the "Licensed Wal-Mart Products" sold by Wal-Mart from September 20, 2018 to March 19, 2019 were marked. *See generally id*. at 9–13; *see also* Dkt. No. 314 at 2–3. TWW also offers unsupported conclusory statements. *See generally id*. TWW did not deny[5], argue, or produce evidence whether the "Licensed Wal-Mart Products" should have been marked, were marked (other than TWW's argument that it has a long-standing policy to mark its own products), made reasonable efforts to mark the accused unmarked products, or whether the "Licensed Wal-Mart Products" did not practice[6] the patent-in-suit.

Since the Defendants have met their burden and TWW has failed to produce sufficient evidence to show a genuine issue of fact, the No Marking Motion should be granted. Therefore, TWW is precluded from seeking pre-suit damages.

---

[4] Defendants also supply photos of marked TWW products from one of the Defendants' website as proof that TWW marks its products. First, these photos were taken on "1/23/2021" which is outside of the period the Defendants allege that TWW failed to mark products. Second, the photo was taken from one of the Defendants' websites not a Wal-Mart website or store, which are the products that are allegedly unmarked. *See generally* Dkt. No. 242-3.

[5] TWW seemingly agreed with the Defendants that the Licensed Wal-Mart Products should have been marked. Dkt. No. 242 at 9 ("Defendants present no evidence—not even a single image of a Wal-Mart product licensed by TWW without proper patent marking.").

[6] It bears noting that TWW has filed a Motion for Summary Judgment of Infringement directed to many of the products the Defendants assert are unmarked. Dkt. No. 203.

### B. WILLFUL INFRINGEMENT MOTION (DKT. NO. 207)

TWW argues "there is no dispute by Defendants that [the Intex 619A Pump and the Bestway P3042P Pump] . . . infringe claims 1, 7, and 11-14 ("Asserted Claims") of the U.S. Patent No. 9,211,018 B2." Dkt. No. 207 at 2. TWW states that the "Defendants have been aware of the Intex 619A Pump's and the Bestway P3042 Pump's infringement of the '018 Patent since at least the filing of TWW's Complaint." *Id*. TWW identifies a document attached to its originally filed Complaint that TWW argues gave the Defendants knowledge of "Intex's and Bestway's express admissions of infringement as to the Intex 619A Pump and the Bestway P3042." *Id*. at 8.

Defendants argue that TWW has not proven by a preponderance of evidence that "Defendants undertook subjectively willful or egregious conduct after TWW filed the Complaints and Proof of Claim on March 21, 2019 and April 10, 2019, respectively." Dkt. No. 251 at 6. Defendants argue "their existing invalidity defenses" are evidence of a "good-faith belief of [the '018 Patent's] invalidity." *Id*. at 8.

A reasonable jury could find that the Defendants did not willfully infringe the '018 Patent because of the Defendants' alleged good-faith belief in the '018 Patent's invalidity. Whether the Defendants actually hold a good-faith belief in the '018 Patent's invalidity is a matter for the fact finders to decide. Furthermore, "under *Halo*, the district court no longer determines as a threshold matter whether the accused infringer's defenses are objectively reasonable. Rather, the entire willfulness determination is to be decided by the jury." *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018); *see also Polara Engineering Inc. v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018) ("Willful infringement is a question of fact reviewed for substantial evidence following a jury trial."). For the reasons discussed above, the Willful Infringement Motion should be denied.

### C.     NO WILLFUL INFRINGEMENT MOTION (DKT. NO. 217)

Defendants argue "there is no evidence that Defendants had pre-suit knowledge of the patent or alleged infringement" and "there is no evidence that Defendants' post-suit conduct is subjectively willful." Dkt. No. 217 at 5.

#### i.     Pre-Suit Willful Infringement

In view of the Court's recommendation on the Marking Motion, TWW's claims of pre-suit willful infringement should be moot.

#### ii.    Post-Suit Willful Infringement

Defendants argue that TWW fails "to identify any evidence of subjectively willful or egregious conduct by the Defendants after it filed the complaint." Dkt. No. 217 at 11. Defendants contend that due to "the 'particular circumstances' of this case, including Defendants' good-faith belief in its non-infringement and invalidity positions, nothing amounts to the 'egregious' or 'wanton' conduct necessary for willfulness." *Id*. Defendants reason that since they "formed a good-faith belief that the '018 Patent was not infringed and was invalid, as set out in their Answers, Non-Infringement Contentions ('NICs'), and Invalidity Contentions ('IVCs')" they cannot be willfully infringing. *Id*.

TWW responds that "Defendants' post-suit knowledge and actions meet the standard for willful infringement." Dkt. No. 280-1 at 14. TWW argues that a reasonable jury could find that the Defendants willfully infringed the asserted patent because the Defendants "made no efforts to stop selling the infringing products or even contact[] its [airbed pump] manufacturers to inquire about the issue of patent infringement." *Id*. (citing Dkt. No. 240-5 at 4–10). TWW also argues that "Defendants' lack of reasonable defenses" could lead a reasonable jury to conclude that Defendants willfully infringed the asserted patent.

11

A reasonable jury could find that the Defendants purposely or knowingly failed to conduct a reasonable inquiry into the merits of TWW's patent infringement claims. Continuing sale of an accused product when considered with other facts and circumstances can be considered willfully infringing behavior. *See Packet Intelligence LLC v. NetScout Sys.*, 965 F.3d 1299, 1315-1316 (Fed. Cir. 2020), *cert. denied* ("NetScout contests that its executives' lack of knowledge regarding the patents and continued infringing activity after this suit was filed cannot support willfulness. Packet Intelligence responds that the jury's willfulness verdict was supported by substantial evidence and should be accorded deference. We agree with Packet Intelligence."). Continuing sales without an adequate inquiry into whether the airbed pumps at issue infringed may be conduct from which a jury could infer willful infringement. TWW makes an argument, which is supported by evidence, that the Defendants did not reasonably investigate allegations of patent infringement, by not reaching out to at least one airbed pump manufacturer to investigate or otherwise stop the flow of accused products to the Defendants. Dkt. No. 240-5 at 3–4. TWW contends that since this behavior occurred after the Defendants had actual knowledge of the patent-in-suit it evidences subjective willfulness by the Defendants. Whether the Defendants took reasonable steps to investigate the merits of TWW's claims is a genuine question of material fact for the jury to decide.

There is also a genuine question of fact over whether Defendants hold their patent infringement defenses in good faith. TWW contends that Defendants "lack [] reasonable defenses," on the other hand, Defendants maintain they "formed a good faith belief that the '018 Patent was not infringed, based on affirmative arguments . . . as set out in Defendants' expert reports and NICs." Dkt. No. 280-1 at 14; Dkt. No. 217 at 12. Accordingly, the No Willful Infringement Motion should be denied.

### D. PRIORITY DATE MOTION (DKT. NO. 208)

Defendants ask the Court to determine:

> (1) Whether the '760 Patent supports an earlier priority date for the Asserted Claims.
> (2) Whether TWW is barred as a matter of law from relying on the Foreign Evidence to establish an earlier priority date, given that: (a) the September 2000 Evidence was developed and maintained exclusively at TWW, in either Taipei, Taiwan or Dongguan City, China; (b) TWW has produced no evidence that named inventor Mr. Cheng Chung ("Tony") Wang was diligent in reducing the claimed invention to practice any time between September 27, 2000 and the December 18, 2000 filing date of the '018 Patent; and/or (c) even if TWW could rely on it, the September 2000 Evidence provides no support for the "wholly" recessed limitation recited in every Asserted Claim.

Dkt. No. 208 at 5. In other words, the Defendants ask the Court to decide the priority date of the '018 Patent. *Id*. Defendants argue that TWW is not entitled to a priority date of April 4, 2000 or September 27, 2000 since 35 U.S.C. § 104 prohibits TWW from relying on foreign evidence to establish an earlier priority date of the asserted claims. Dkt. No. 208 at 12–13. Defendants also contend that TWW cannot provide evidence of an actual reduction to practice or diligence. *See id*. at 14–15.

Defendants' Priority Date Motion fails since it does not comply with Fed. R. Civ. P. 56(a). Fed. R. Civ. P. 56(a) provides:

> (a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, ***identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought***. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(emphasis added). Defendants have not identified the claim or defense that would be implicated by deciding the '018 Patent's priority date. Defendants only ask the Court to make a ruling on the

13

priority date and do not assert how deciding the priority date would affect the merits of the case.

Furthermore, in the context of the Priority Date Motion, TWW's diligence is not at issue. *See Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1362–63 (Fed. Cir. 2001) ("[A] showing of diligence is necessary for a party who was first to conceive but second to reduce to practice."). To necessitate that TWW show diligence there must be an antedating reference; Defendants' Priority Date Motion does not allege there is an antedating reference. *See ATI Techs. ULC v. Iancu*, 920 F.3d 1362, 1369 (Fed. Cir. 2019) ("The diligence requirement implements the principle that, to antedate a reference, the applicant must not only have conceived the invention before the reference date, but must have reasonably continued activity to reduce the invention to practice.").

Defendants' request is akin to a declaratory judgment as to the priority date of the '018 Patent, but it is not a proper summary judgment motion under Fed. R. Civ. P. 56. The Court should not rule on issues that have not been identified as bearing on the merits of the case. Accordingly, the Priority Date Motion should be denied.

### IV. CONCLUSION

For the reasons assigned above, the Marking Motion should be **GRANTED**; the Willful Infringement Motion should be **DENIED**; the No Willful Infringement Motion should be **DENIED** as to post-suit willful infringement; and the Priority Date Motion should be **DENIED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report **by May 11, 2021** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs.*

*Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 3rd day of May, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE