IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TEAM WORLDWIDE CORPORATION, § § *Plaintiff*, § § v. § § ACADEMY, LTD d/b/a ACADEMY § SPORTS + OUTDOORS, § § *Defendant*. § | Case No. 2:19-cv-00092-JRG-RSP LEAD CASE |

## MEMORANDUM ORDER

Before the Court is the Request for Clarification of Report and Recommendation of Defendants' Motion for Summary Judgment on Marking (Dkt. 393) ("Request"), filed by Plaintiff Team Worldwide Corporation ("TWW"). Dkt. No. 396. TWW requests the Court to clarify its previous Report and Recommendation ("R&R") (Dkt. No. 393). *Id*. at 2–3[1]. On May 6, 2021, the Court held a pretrial conference, each party made oral arguments regarding the Request. Out of an abundance of caution, the Court will clarify its prior R&R.

TWW seeks clarification on whether the R&R precludes all pre-suit damages prior to the date of actual notice (i.e. filing date of the present lawsuit) or whether TWW can recover damages for complying with § 287 before September 20, 2018. *Id*. at 3. The R&R precludes <u>all</u> pre-suit damages prior to the date of actual notice, as is consistent with Federal Circuit precedent. *See Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 865-866 (Fed. Cir. 2020) ("*Arctic Cat II*").

---

[1] Citations are to the document numbers and page numbers assigned through CM/ECF.

TWW contends it is entitled to pre-suit damages for periods of previous § 287 compliance. Dkt. No. 396 at 2–3. TWW attempts to support its position by relying on two older district court decisions that did not have the benefit of the more recent Federal Circuit opinions, especially the Circuit's recent decision in *Arctic Cat II*. See *Clancy Sys. Int'l v. Symbol Techs., Inc.*, 953 F. Supp. 1170, 1174 (D.Colo. 1997); *see also Metrologic Instruments, Inc. v. PSC, Inc.*, No. 99-4876-JBS, 2004 U.S. Dist. LEXIS 24949, *60-61 (D.N.J. Dec. 13, 2004). The opinion in *Clancy* (which was incorporated into *Metrologic*) is inconsistent with *Arctic Cat II*. *Clancy* states:

> I have been unable to locate case law regarding whether a licensee's failure to mark negates prior constructive notice. **The Federal Circuit has stated, in dicta[2], that "once marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute." American Medical Systems, 6 F.3d at 1537. However, I do not read that language as addressing the situation here**--i.e., where marking may have been proper at the start of a patent term and only became improper after the present defendant began infringing.
>
> For example, assume a patentee and all of its licensees have marked appropriately patented articles for several years before a new licensee begins selling unmarked products. Under such circumstances, it would make no sense to hold that the new licensee's failure to mark eliminates, retroactively, years of appropriate constructive notice.

953 F.Supp. at 1174 (emphasis added) (footnote added). What the Court in *Clancy* declared "would make no sense," is actually just a consequence of the harsh remedy that Congress decided was necessary to incentivize marking of patented articles. *Arctic Cat II* clarified that:

> Section 287 provides that "in the event of failure so to mark, *no* damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter". The statute thus prohibits a patentee from receiving *any* damages in a subsequent action for infringement after a failure to mark . . . . The notice requirement to which a

---

[2] Notably the passage *Clancy* cites as dicta in *Am. Med. Sys., Inc.* is the exact same citation found in the holding of *Arctic Cat II*. Compare *Clancy*, 953 F.Supp. at 1174 ("The Federal Circuit has stated, in dicta, that "once marking has begun, it must be substantially consistent and continuous in order for the party to avail itself of the constructive notice provisions of the statute." *American Medical Systems*, 6 F.3d at 1537. However, I do not read that language as addressing the situation here . . . .) *with Arctic Cat II* at 865 ("In *American Medical Systems*, 6 F.3d at 1537, we interpreted § 287 to allow a patentee who had sold unmarked products to begin recovering damages after the patentee began marking.").

2

> patentee is subjected cannot be switched on and off as the patentee or licensee starts and stops making or selling its product. After all, even after a patentee ceases sales of unmarked products, nothing precludes the patentee from resuming sales or authorizing a licensee to do so. In the meantime, unmarked products remain on the market, incorrectly indicating to the public that there is no patent, while no corrective action has been taken by the patentee. Confusion and uncertainty may result. Thus, once a patentee begins making or selling a patented article, the notice requirement attaches, and the obligation imposed by § 287 is discharged only by providing actual or constructive notice.

950 F.3d at 865 (emphasis in original) (citations omitted). First, the Federal Circuit strictly interpreted § 287 to make clear that once a patentee (or its licensee) is non-compliant with § 287, recovery of damages is limited to either the period after marking resumes or after the alleged infringer has been given actual notice. *Id*. at 864 ("a patentee who begins selling unmarked products can cure noncompliance with the notice requirement—and thus begin recovering damages—by beginning to mark its products in accordance with the statute.") (citing *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993)).

Second, the Federal Circuit is concerned not only with properly interpreting the § 287 statute but also effectuating the underlying policy. *Id*. ("This reading of § 287 comports with the purpose of the marking statute. The policy of § 287 is to encourage marking, not merely to discourage the sale of unmarked products. . . Requiring a patentee who has sold unmarked products to provide notice in order to begin recovering damages advances these objectives by informing the public and possible infringers that the article is patented. Arctic Cat's proposed interpretation, on the other hand, would undermine these objectives. In Arctic Cat's view, § 287 should be read to allow a patentee to mislead others that they are free to make and sell an article that is actually patented, but nonetheless allow the patentee to recover damages without undertaking any corrective action. We reject this view."). TWW's interpretation of *Arctic Cat II* would run afoul of the Federal Circuit's policy objectives, thus TWW's interpretation cannot be correct. The Court

would like to note that while "courts may consider whether the patentee made reasonable efforts to ensure third parties' compliance with the marking statute," that is not at issue here. *Arctic Cat II* at 864. As stated in the R&R, TWW did not present any evidence that it undertook any reasonable efforts to make Wal-Mart comply with § 287. Dkt. No. 393 at 9.

    TWW also raised a second point in its Request, regarding whether it should be permitted to provide "evidence of actual pre-suit notice of the '018 patent." Dkt. No. 396 at 3. TWW also notes that "the Court's recommendation on marking also impacts the recommendation that willfulness based on pre-suit conduct is moot. TWW respectfully requests that, to the extent the Court clarifies its recommendation on pre-notice damages, the Court also clarifies its recommendation on pre-suit willfulness so that TWW is not precluded from offering evidence on pre-suit willfulness." *Id*. TWW failed to make an adequate showing that there was actual notice before the filing of this lawsuit. TWW failed to provide evidence in opposition to the MSJ that it had served the Defendants any ***actual*** notice before this lawsuit was filed. The Federal Circuit has described actual notice as:

> For purposes of section 287(a), notice must be of "the infringement," not merely notice of the patent's existence or ownership. ***Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device***. . . . It is irrelevant, contrary to the district court's conclusion, whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.

*Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (emphasis added). TWW did not present any evidence that actual notice, as defined by the Federal Circuit, was given to the Defendants prior to the filing of this lawsuit. This finding of fact was inherent in the R&R when it limited TWW to no pre-suit damages. Dkt. No. 292 at 6 ("Defendants argue that 'TWW should be precluded from seeking damages prior to the date of actual notice to

each Defendant because TWW failed to mark substantially all of its licensed products in compliance with 35 U.S.C. § 287.'"). In Defendants' Statement of Undisputed Material Facts No. 5 they state "[e]ach Defendant first received notice of TWW's infringement allegations in the context of litigation. Sears and Transform were first notified of TWW's allegations on or after April 10, 2019, when TWW filed a Proof of Claim in the Sears Bankruptcy Proceeding." Dkt. No. 222 at 6. In response, TWW states

> Disputed. While Defendants allege that they were unaware of the '018 Patent until TWW filed its complaint on March 19, 2019, or in the case of Sears and Transform, until TWW filed its Notice of Claim in the Sears Bankruptcy on or after April 10, 2019, TWW asserts that there is ample evidence to demonstrate that Defendants have possessed actual and/or constructive knowledge of the '018 Patent before TWW filed its complaint on March 19, 2018.

Dkt. No. 242 at 5. This is insufficient for the actual notice requirement as defined by the Federal Circuit. It was inherent that by granting the Defendants' motion in full and specifically limiting the damages to the period after actual notice (i.e. filing date of lawsuit) the Court found that TWW failed to produce sufficient evidence to contend that the date of actual knowledge was a date other than the lawsuit filing date.

If TWW seeks to advance the argument that pre-suit willful infringement can stand-in for the actual notice requirement—that is incorrect. *Arctic Cat II* squarely addresses this issue. *Arctic Cat II* at 866 ("[W]e reiterate the conclusion that *willfulness, as an indication that an infringer knew of a patent and of its infringement, does not serve as actual notice as contemplated by § 287*. While willfulness turns on the knowledge of an infringer, § 287 is directed to the conduct of the patentee.") (emphasis added).

**SIGNED this 10th day of May, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

5